The opinion of the court was delivered by
Rogers, J.
—
The 3d of January, 1822, Richard P. Lawrence, being indebted to Solomon Levy, the defendant in error, on a note of one thousand dollars, sold him a chariottee. On the same day, a bill of sale was given for the'property, and at the same time, a receipt was also given,'by Lawrence to Levy, for the storeage of the chariottee. The 6th of April, 1822, Lawrence, with whom the property was deposited on storage, sold the chariottee a second time to Thomas Shaw. Shaw alleged, that Lawrence wás indebted to him eighty dollars for work done; that he held his note for three hundred dollars, and that these constituted the consideration of the purchase. Shaw took possession of the property, and brought it from New York to this city, Shaw confessed a judgment to one Blouvelt,' who levied, seized, and took in execution, the chariottee, as the plaintiffs in error contend. This judgment was afterwards assigned to Thomas Smith, and Solomon Levy, who replevied the property from the bands of the sheriff. One of the defendants, Shaiv, offered in evidence his book of original entries, to prove work and labour done by him, for Lawrence, to the amount of eighty dollars; and for this purpose, Shaw was sworn, to make true answers to such questions as should be put to him, relative to the matter before the court, — whereupon Shaw proved that it was his book of original entries, and that the entries were made by him at the time they bore date. They were then given in evidence. The counsel for the plaintiff then proposed to examine Shaw, generally as a. *100 witness; which being objected to, the court decided that he was compelled to make true answers to such questions as might be put to him, under the court’s direction,.as a witness, generally, in the case. This forms the first error assigned. The defendant, Shaw, was a witness only for a particular and special purpose, to prove his book of original entries, and .questions the answers to which would have tended to prove, that this was not his book of original entries, or that the. entries were not made at the time they bore date, would have been correct and proper. The inquiry appears not to have been confined within these limits, but seems to have been extended to a general inquiry into the merits of the whole transaction. Shaw was compelled to give evidence, generally, although he" had been sworn merely on his voir dire, a novelty, certainly, in the practice of Pennsylvania. He might have been, with his own consent, examined as a witness, but he could not, according to the law of this state, be compelled to testify. 2 Yeates, 154, 163, 324.- Shaw, so far from consenting, objected expressly by his counsel to his examination, generally, as a witness.
i The next question which arises is, whether the bill of sale, from Lawrence to Levy, under the circumstances of this case, be fraudulent. It is alleged,' that if it be not a moral, yet it is a legal fraud; that it is a fraudulent per se, and not merely evidence of fraud. :
On the 3d of January, 1822,- Lawrence gives a bill of sale of the chariottee to Levy, in payment of a debt, who leaves it in his possession on storage. There is no change of possession, no visible change of ownership. It remains in this situation, until the 6th of April, 1822, a period of more than three months, when the property was sold by Lawrence to Shaw, who takes immediate possession, and removes the property from New York to Philadelphia. As between Levy and a fair bona fide purchaser, without notice, Levy would have no right to' the property. Whatever interest he might have had, would be devested by the sale. It would be fraudulent per se, and not merely evidence of fraud. 5 Serg. & Rawle, 275. 10 Serg. & Rawle, 201.
If there was actual or moral fraud, that is, a secret understanding between Levy and Lawrence, to cheat and defraud Shaw, or any person who might purchase, the question whether Shaw had or had not notice, or whether he, Shaw, was himself guilty of fraud, would be but of little consequence. In such a case, as no title to the property would have passed, Lawrence would have had a right to sell to , whom he pleased. The law would not have assisted either party, but would have adjudged the property to Shaw, who, at the time of the replevin, had the possession of the chariottee. But if this were a fair transaction between Lawrence and Levy, it becomes a most material question for the jury to decide, whether Shaw was a bona fide purchaser without notice of *101 the sale, previously made by Lawrence to Levy. If Shaw had notice of the previous sale, what right has he to complain? In purchasing property, which he knew to belong to another, he himself would be guilty of an actual fraud, and as Levy could have recovered the property from Lawrence, had there been no trans-. fer, so he shall recover from Shaw: having notice, he can be in no better situation than the person from whom' he purchased. But if Shaw purchased bona fide, he would have a right to allege, that he had no notice of the transfer of the chariottee, and had no means of ascertaining the real situation of the property— that possession of personal property is prima facie evidence of ownership; that Lawrence was at one time the owner, and that nothing which had taken place, could lead him to the knowledge, that he had sold the property to Levy; that a symbolical delivery of the article, was not sufficient, but that the law required, that the delivery, so far as was practicable, should be an external visible change of property or possession, open and apparent to the world, and not a mere formal delivery on paper, while the ostensible owner remains unchanged. I do not consider that this principle depends upon a secret trust between the original parties, but on public policy, and the sound maxim of morality and law, that where one of two innocent persons must suffer, he who is the cause of the loss must bear it. Wherever there is a sale of property, and no actual possession delivered, it remains at the risk of the purchaser: as between him, and the vendor,.the property is his; but when it passes into the-hands - of a bona fide. purchaser, without notice, it would be against sound policy to permit a recovery. The maxim caveat emptor, does not apply. I hold the law to be the same, whether the possessor be the immediate purchaser from the original vendor, or from his fraudulent vendee. Thus, if Lawrence had sold the chariottee to Shg.w, with notice, and Shaw had sold to Smith, without notice, Levy could not recover from Smith. It was his own folly to leave the chariottee in the possession of Lawi'ence, and others are not to suffer from his negligence or neglect. A bona fide purchaser from a party who has acquired goods by fraud, is in a different situation from the creditors of such a party. The original vendor, when reducing the sale, is entitled to reclaim the goods from the creditors, as well as from the vendee himself, because they cannot lawfully profit by the fraud of their debtor. But when the goods have been resold before the reduction of the first sale, to a party who has bought them in bona fide, there is no ground either in legal principle, or upon equitable considerations, for allowing the original vendor to reclaim them from such purchaser. In all cases, where a competition occurred between the original vendor, and the creditors of the fraudulent vendee, it was admitted and taken for granted, that a vendor would have no right to reclaim the goods from a bona fide purchaser. It is only, however, where the second *102 purchaser is in bona fide, that he is thus safe from the demand of the original owner of the goods. If he has purchased them in the knowledge that they were fraudulently acquired by his vendor, he’ thereby becomes particeps firaudis, and the goods may be reclaimed from him by the original owner, in.the same way as they-might-have been from his vendor. 1 Brown’s Law of Sales, 416, 417.
The court were requested to charge the jury, — that if the property in question had been levied upon by Blouvelt’s execution, before the writ of replevin -issued, the .writ of replevin is void, and the plaintiff cannot recover. The court answer, — that, the execution cannot operate in the case, because it appears the goods were not levied on; and if they were, the defendant must prove it .was for a bona fide debt. It is provided, by an act of assembly, passed on the Sd of April, 1779, (1 Smith, 476,) that all writs of replevin granted or issued for any owner or owners, of any goods or chattels, levied, seized, or taken in execution, or by distress, or otherwise, by any sheriff, naval officer, lieutenant, or sub-lieutenant of the city of Philadelphia, or of any county, constable, collector of public taxes, or other officer, acting in their several qffiees*. under the authority of the state, are irregular, erroneous, and void; and that all such writs may, and shall, at any time.zitev the service, be quashed on motion by the court, to which they are returnable, the said court being ascertained of the fact, by affidavit, or otherwise. The second section provides, that the court-shall a-ward treble costs, and also may order an attachment against a prothonotary or clerk, who grants such writ, knowing that it is for goods an.d chattels, taken in execution, or seized as aforesaid. The motives for passing this highly beneficial act, are set forth in the preamble, by the legislature themselves, to be, to remedy an abuse which bad prevailed, in granting writs of replevin, for goods and chattels taken in execution, and for fines and penalties due the commonwealth, to the delay of public justice, and to the great vexation of the officers concertied in taking or levying the same. The anxiety of the legislature to remedy the mischief appears in the penalties they have imposed for its wilful violation. It is intended- to prevent delay, and also for the security of the officer concerned in the levy. The least reflection will serve to show the mischief to which-such a practice must necessarily lead; so much so, that it is impossible to foresee the. extent to which a creditor may be delayed in his just demands, by a litigious and fraudulent debtor. An execution, which is the end of the law, would be only the commencement of a new law suit, and so, toties quoties, as bis goods were taken in execution by the public officer.
In this cáse an application was made to quash the writ, which was refused, but,, for what reason, does not distinctly appear; nor do I exactly understand the grounds on which the court express their opinion that the goods were not expressly levied on; whether *103 they were not levied on, in point of fact, or whether their objection was to the manner in which the levy was made.. If the chariottee was levied on, seized, and taken in execution, the court, on motion, should have quashed the writ. Having refused the application to quash, can the court be called on, under the pleadings in this cause, to instruct the jury that the action cannot bé sustained? Had the defendants intended to rely on this as a defence to the action, they should have pleaded in abatement, or in bar. The plaintiff would then have come prepared to meet the defendant, on .the issue, that the goods were seized and taken in execution at the time of replevin. The court may ascertain the facts, either by affidavit or otherwise; that is, as I understand it, with the intervention of a jury, referred to them by a plea in abatement or in bar. Where the fact, or the law arising on the facts, was doubtful, a prudent judge would refuse to quash on affidavit, but would leave the party, to his plea. In this way, and in this way only, he would have the assistance of the jury, and would secure to the party a review of his opinion on the law of the case, by the Supreme Court. The legislature intended that the party should have a summary' remedy, but not that he should be confined to a motion to quash, lor they have made the writ irregular, erroneous, and void.
I cannot concur with the learned judge, that the defendants were bound to prove that it was for a bona fide debt, before they could have the protection of the statute. ■ All they had to do, was to show that the property replevied was levied, seized, and taken in execution in pursuance of an execution regularly issued. The validity of the judgment, or whether fraudulent or not, in such case, cannot in my opinion, be inquired into. The legislature impose no hardship on the owner of the property. They do not devest his right, but merely prevent him from pursuing a remedy by replevin, upon the ground of public policy, the danger of delay', and of vexation to public officers. He has his remedy against the sheriff and his replevin against the sheriff’s vendee. His security is most ample, without resorting to the action of replevin.
Judgment reversed, and a venire facias de novo awarded.