## JOHN C. DESHLER v. GEORGE C. DODGE.

The eleventh section of the Judiciary Act of 1789, says, "nor shall any District or Circuit Court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange."

This clause has no application to the case of a suit by the assignee of a chose in action to recover possession of the thing in specie, or damages for its wrongful caption or detention.

Therefore where an assignee of a package of bank-notes brought an action of replevin for the package, the action can be maintained in the Circuit Court, although the assignor could not himself have sued in that court.

THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Ohio.

It was an action of replevin brought by Deshler, a resident and citizen of the State of New York, against Dodge, a citizen and resident of the State of Ohio.

The proceedings in the case were these:

In March, 1853, Deshler filed in the Circuit Court of the United States for the District of Ohio the following *præcipe* and affidavit.

*Præcipe.* Issue a writ of replevin for the following goods and chattels, to wit, a quantity of bank-bills, of various denominations, consisting of fives, tens, twenties, and fifties, given for the payment, in the aggregate, of the sum of ten thousand five hundred and eighty dollars, being the same bank-bills taken by the said George C. Dodge, from the City Bank of Cleveland, on the 26th day of March, 1853. Also another quantity of bank-bills, of various denominations, consisting of ones, twos, threes, fours, fives, tens, twenties, fifties, and hundreds, and given for the payment, in the aggregate, for the sum of seven thousand nine hundred sixty-five dollars, being the same bank-bills taken by the said George C. Dodge, from the Merchants Bank of Cleveland, on the 26th day of March, A. D. 1853. Also another quantity of bank-bills, of various denominations, consisting of ones twos,

threes, fives, tens, twenties, fifties, and hundreds, and given for the payment, in the aggregate, of the sum of nine thousand two hundred and sixteen dollars, being the same bank-bills taken by the said George C. Dodge, from the Canal Bank of Cleveland, on the 26th day of March, A. D. 1853. Also another quantity of bank-bills, of various denominations, consisting of ones, twos, threes, fives, tens, twenties, fifties, and hundreds, and given for the payment, in the aggregate, of the sum of eleven thousand two hundred and twenty dollars, being the same bank-bills taken by the said George C. Dodge, from the Commercial Bank of Cleveland, on the 26th day of March, A. D. 1853.

*Affidavit.* John G. Deshler, plaintiff in the case in the annexed *præcipe* named, being first duly sworn, does depose and say: That he has good right to the possession of the goods and chattels described in the annexed *præcipe*, and that the same are wrongfully detained by the said George C. Dodge, named as defendant in the said *præcipe;* and that the said goods and chattels were not taken in execution on any judgment against the said John G. Deshler, nor for the payment of any tax, fine, or amercement assessed against the said Deshler, nor by virtue of any writ of replevin, or any other mesne or final process whatsoever issued against the said Deshler. Said Deshler further makes oath and says, that he is a citizen and resident of the State of New York, and that the said George C. Dodge is a citizen and a resident of the State of Ohio.

*U. S. America, District of Ohio, ss.* JOHN G. DESHLER

The writ was issued accordingly, and served by the marshal. The property was appraised at $38,592. Deshler gave the usual replevin bond.

At April term, 1853, Dodge made the following motion:

And now comes the said George C. Dodge, by R. P. Spalding, his attorney, and moves the court for a rule on the plaintiff to show cause, during the present term, why the said suit should not stand dismissed, for all and singular the reasons following, to wit:

1st. Because there is no sufficient affidavit filed by plaintiff as a predicate for the writ of replevin.

2d. Because it does not comport with sound public policy, that any portion of the revenue of the State should be arrested, at the instance of the tax-payers, or other person for his benefit, and taken from the hands of the collector, through the instrumentality of the writ of replevin.

3d. Because the several bank-bills in the writ specified were assigned to the plaintiff by said several banks in the city of Cleveland, for the sole purpose of instituting suit in this court.

4th. Because said assignment from said banks to said John G. Deshler was colorable merely, and operates as a fraud upon the act of Congress of September 24, 1789, establishing the judicial courts of the United States.

5th. Because this court is debarred taking jurisdiction of this case by a provision contained in the eleventh section of said act of Congress of September 24, 1789, in the words following : " Nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of any assignee, unless a suit might have been prosecuted in such court, to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange." It being admitted, for the purposes of this motion, that the said John G. Deshler derived all his right to said bank-notes from an assignment in writing made to him by the Commercial Bank, the Merchants Bank, the City Bank, and the Canal Bank of Cleveland, all corporate bodies in the State of Ohio, after the seizure of the said bank-bills, by the said George C. Dodge, as treasurer of Cuyahoga county, to satisfy sundry taxes assessed against said banks.                    R. P. SPALDING,
*Attorney for defendant.*

In August, 1853, the court overruled the motion, but permitted the defendant to set up the same matter, by plea.

At the same term, the plaintiff, Deshler, filed his declaration, and Dodge filed the following plea :

And the said George C. Dodge, in his own proper person, comes and says, that this court ought not to have or take further cognizance of the action aforesaid, because he says that on the day and year in the said declaration mentioned, to wit, on the twenty-sixth day of March, in the year one thousand eight hundred and fifty-three, he, the said George C. Dodge, was acting as treasurer of the county of Cuyahoga, in the State of Ohio, and as such treasurer on the day and year last mentioned, at Cleveland, in the county of Cuyahoga aforesaid, held in his hands for collection the tax duplicate of said county of Cuyahoga, for the year one thousand eight hundred and fifty-two, upon which tax duplicate sundry large amounts of taxes stood assessed against the several banks in the plaintiff's declaration mentioned, to wit, against the City Bank of Cleveland, the Merchants Bank of Cleveland, the Canal Bank of Cleveland, and the Commercial Bank of Cleveland; which said taxes, with a large amount of penalty thereon, were then due and unpaid; and it then and there became, and was the official duty of the said George C. Dodge, as such treasurer, to distrain a sufficient amount of bank-bills belonging to said banks and in their pos-

session, (respectively,) to satisfy the said taxes and penalties, amounting in the aggregate to a large sum of money, to wit, to the sum of thirty-eight thousand nine hundred and eighty-one dollars. And the said George C. Dodge did in fact, then and there, to wit, on the 26th day of March, in the year one thousand eight hundred and fifty-three, at the city of Cleveland, in the county of Cuyahoga aforesaid, enter into said banks and take and distrain from them, respectively, the amount of taxes and penalty as aforesaid, to wit: From the City Bank of Cleveland he took and distrained the sum of ten thousand five hundred and eighty dollars in bank-bills of various denominations, consisting of fives, tens, twenties, and fifties, the same being at the time said distress was made the exclusive property of said City Bank of Cleveland. From the Merchants Bank of Cleveland he took and distrained the sum of seven thousand nine hundred and sixty-five dollars in bank-bills of various denominations, consisting of ones, twos, threes, fours, fives, tens, twenties, fifties, and hundreds, the same being at the time said distress was made the exclusive property of said Merchants Bank of Cleveland. From the Canal Bank of Cleveland he took and distrained the sum of nine thousand two hundred and sixteen dollars in bank-bills of various denominations, consisting of ones, twos, threes, fives, tens, twenties, fifties, and hundreds, the same being at the time said distress was made the exclusive property of said Canal Bank of Cleveland. And from the Commercial Bank of Cleveland he took and distrained the sum of eleven thousand two hundred and twenty dollars in bank-bills of various denominations, consisting of ones, twos, threes, fives, tens, twenties, fifties, and hundreds, the same being at the time said distress was made the exclusive property of said Commercial Bank of Cleveland. And the said George C. Dodge, having thus, then and there taken and distrained said bank-bills, being all and singular the bank-bills in the plaintiff's declaration set forth and described, immediately, to wit, on the twenty-sixth day of March, in the year one thousand eight hundred and fifty-three aforesaid, removed said several bank-bills from said several banks, respectively, to a place of security, to wit, to the vault of the Cleveland Insurance Company, where the same were specially deposited by the said George C. Dodge, and where the same in fact remained to the credit of the said George C. Dodge as a special deposit, until they were afterwards seized and taken by force of the writ of replevin issued at the instance of the said John G. Deshler, plaintiff in this suit.

And the said George C. Dodge further saith, that on the same twenty-sixth day of March, A. D. 1853, but after the said George C. Dodge had so as aforesaid distrained, and taken away from

the possession and keeping of the said several banks herein before mentioned, the said bank-bills above mentioned, and after he had deposited the same for safe keeping in the vault of the Cleveland Insurance Company in manner aforesaid, the said several banks above mentioned, all of which were incorporated by the laws of the State of Ohio to transact a general banking business in said city of Cleveland, in the county of Cuyahoga aforesaid, and not elsewhere, and all of which in fact were at the time said taxes were assessed, and at the time the said bank-bills were so as aforesaid distrained for the payment of said taxes, transacting a general banking business in the city of Cleveland aforesaid, entered into an arrangement with the said John G. Deshler, the plaintiff in this suit, who claims to be a citizen and resident in the State of New York; whereby the said several banks, by written instruments of assignment, bearing date on the said twenty-sixth day of March, A. D. 1853, and executed in behalf of said banks by their cashiers or other agents duly authorized by the directors of the same, sold, assigned, and transferred to the said John G. Deshler, plaintiff in this suit, all and singular the bank-bills so as aforesaid taken and distrained by the said George C. Dodge, and which said bank-bills were, by the express terms of said several assignments in writing, declared to be then, and at the time of the execution of said several instruments of assignment, in the possession of George C. Dodge, treasurer of the county of Cuyahoga, in the State of Ohio.

And the said George C. Dodge further saith, that before and at the time of the taking and distraining said several bank-bills for the payment of said taxes and penalties assessed as aforesaid against said several banks, he, the said John G. Deshler, had no right of property in, or claim to, the possession of said several bank-bills whatsoever, but that all the pretended right, interest, and claim of the said John G. Deshler thereto arose under and by virtue of said several instruments of assignments, executed and delivered long after said bank-bills had been taken and distrained by the said George C. Dodge, as treasurer as aforesaid, in satisfaction of the taxes and penalty so due as aforesaid from said banks, and while the said bank-bills were on special deposit in the vault of the said Cleveland Insurance Company to the credit of the said George C. Dodge, treasurer as aforesaid. And the said George C. Dodge further saith, that he is a citizen of and resident in the State of Ohio, and was such at the time when this suit was instituted; and that all and singular said banks are corporate bodies of said State of Ohio, and have not now and never had any legal existence except within the limits of said State. And so the said George C. Dodge pleads; and

says, that said supposed causes of action are not within the jurisdiction of this court, and this he is ready to verify; whereof he prays judgment whether this court can or will take further cognizance of the action aforesaid.     GEORGE C. DODGE.

This plea was verified by affidavit.

The plaintiff demurred to this plea, when the court overruled the demurrer and sustained the plea upon the ground, " that the matters therein contained are sufficient in law to preclude the said Deshler from having and maintaining said action against the said Dodge in this court, and that the court has no jurisdiction of the same."

Deshler. sued out a writ of error, and brought the case up to this court.

It was argued by *Mr. Stanberry*, for the plaintiff in error, and by *Mr. Spalding* and *Mr. Pugh*, for the defendant.

*Mr. Stanberry.*

Only one question is made in this case, and that is whether replevin will lie to recover the possession of certain bank-notes, payable to bearer, wrongfully detained by the defendant, the plaintiff claiming as owner of the notes by purchase and assignment from former owners of them, not capable of suing in the courts of the United States.

The decision in the court below was adverse to the plaintiff on the ground that the case was within the eleventh section of the Judiciary Act.

That section denies to the circuit courts of the United States cognizance of any suit to recover the contents of any promissory note, or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the contents, if no assignment had been made, except in cases of foreign bills of exchange.

This section restricts the right of suit given by the Constitution, in reference to citizenship, — must therefore be construed strictly, and be confined to the very cases within the restriction.

To make the restriction apply, these things must concur.

1. A plaintiff claiming as assignee of a chose in action.

2. A suit for the contents of such chose in action.

3. An assignor who could not have maintained the suit for the contents.

1. The plaintiff here is not the assignee of a chose in action within the meaning of this section.

The subject-matter was bank-notes, payable on demand to bearer.   Such a chose passes by delivery.

There is no promisee named in the contract, no named person with whom and to whom the contract or promise was made.

Deshler *v.* Dodge.

The promise is original to every holder in succession.

Although there happened to be a written assignment in this case, yet that is only evidence of a sale. Just as in a bill of sale of goods, or any chattel, the purchaser is not made an assignee by taking written evidence of his purchase. He takes as purchaser, as owner, a *jus in rem*, not *ad re*.

2. No suit for contents.

The suit is for a thing in *specie*, *in rem*, not on the contract, not against the banks who made the notes, not against any one liable on the contract.

A suit for the contents of a note must be a suit to recover the thing promised to be paid by the note, not for the note, but something contained within it.

Such a suit destroys the chose in action; it reduces it to a chose in possession, *transit in rem adjudicatam*.

But this suit is not for the contents, it is not on the contract, or against any one liable in virtue of the contract. It does not, when judgment is recovered, merge the chose, for it remains a chose in action after judgment and recovery.

Finally, this suit is not within the intent of the act, not within the mischief to be prevented. That intent is clearly to restrain the construction of domestic contracts to the domestic forum, so as to ensure the application of the *lex loci contractus*, in cases where in its inception the contract was made in a State and between citizens of the same State. The exception in favor of foreign bills of exchange proves the rule to be as stated.

This suit not being on the contract, nor against the promisor, but only to recover a thing in the hands of a wrongdoer, does not come at all within the reason of the rule.

The plaintiff will rely on the following cases. Bank of Kentucky *v.* Wister et al. 2 Peters, 324. It was held, in this case, that in an action for or upon a bank-note, payable to bearer, against the bank, it is sufficient if the holder or plaintiff is entitled to sue in the federal courts, without regard to the character of any former holder; and that such a note is payable to anybody, and is not affected by the disabilities of the nominal payee.

Bullard *v.* Bell, 1 Mason, 251, held that the eleventh section only applies to actions founded on choses in action by an assignee, and that a bank-note, payable to A. B. or bearer, whether A. B. were a fictitious person or not, was not within the act, and that the promise was in law made to each holder as an original promisee. In this case the action was upon the note against a stockholder individually liable.

Smith et al. *v.* Kernochen, 7 How. 198, was an ejectment by an assignee of a mortgage, from a mortgagor not competent to sue in United States courts. The objection was that the

assignment was merely colorable.    Neither counsel nor court suggested any objection under the eleventh section.

The Brig Sarah Ann, 2 Sumner, 211.    This case is to the point, that the sale and assignment of a chattel by a person out of possession is not the sale of a chose in action, but is the sale of the thing itself, and passes the title, whether the subject-matter is in the hands of a lawful depositary or of a wrong-doer.    24 Pick. 95.

In all the cases relied upon by the counsel for the defendant in error, the action was for the contents of the chose against the maker or debtor, in virtue of his contract or debt, and not, as in the case at bar, for the specific thing, and against a mere tortious holder.

The following notice of the view taken by the counsel for the defendant in error, is from the brief of *Mr. Spalding.*

But one point is made by defendant to sustain the judgment of the court below, to wit:

The assignment, made by the several banks named in the pleadings, of the bank-bills in question to the plaintiff, after the same had been distrained for taxes by the defendant, and had been removed from their possession, was simply an assignment of a chose in action, within the meaning of the eleventh section of the "Act to establish the judicial courts of the United States," approved September 24th, 1789.    United States Statutes at Large, volume 1, p. 79.    And as the banks could not themselves have maintained a suit in the federal court to recover said bank-bills, if no assignment had been made, so a like disability attaches to their assignee; or, more properly speaking, as the court below could not take jurisdiction as between the banks and the defendant, so by the terms of said statute it is prohibited from taking cognizance as between the assignee of the banks and the defendant.

The words of the prohibition are as follows: " Nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange."

For the construction heretofore put upon this act of Congress by the courts, see Serè & Laralde *v.* Pilot et al. 6 Cranch, 332; Bradford *v.* Jenks et al. 2 McLean, 130; Gibson et al. *v.* Chen, 16 Peters, 315; Dromgoole et al. *v.* F. & M. Bank, 2 Howard, 241; Brown *v.* Noyes, 2 Woodb. & Minot, 80; Sheldon et al. *v.* Sill, 8 Howard, 441; 8 Porter, Alabama Rep. 240.

In this last-mentioned case, Mr. Justice Grier, in pronouncing

53 *

---

---

the opinion of the court, says, " The term chose in action is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises, which confer on one party a right to recover a personal chattel or a sum of money from another by action."

I shall insist that the only right, (if any right there was,) transferred by the banks of Cleveland to John G. Deshler, under the circumstances set forth in the plea, was a thing in action; a mere right to sue George C. Dodge to recover, in replevin, the bank-bills, or in trover the value of the bank-bills, if Dodge had improperly converted them. And hence the Circuit Court of the United States had no jurisdiction.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Ohio.

The suit below was an action of replevein to recover the possession of a quantity of bank-bills, in the hands of the defendant, upon banks in the city of Cleveland, amounting in the whole to the sum of thirty-eight thousand five hundred and ninety-two dollars, and the title to which was derived by an assignment from the banks to the plaintiff. The declaration is in the usual form for wrongfully and unjustly detaining the possession of the property, the plaintiff averring that he is a citizen and resident of the State of New York; and the defendant a citizen and resident of the State of Ohio.

To this declaration, the defendant plead to the jurisdiction of the court, setting up that the defendant was acting-treasurer of the county of Cuyahoga, Ohio, and had distrained the bills in question belonging to the banks to satisfy the taxes and penalties duly imposed upon them; and that after the said bills had been thus distrained and in his possession, the said banks being incorporated companies by the laws of the State of Ohio, and doing business in the city of Cleveland, sold, assigned, and transferred the same to the plaintiff; and that all the right and title to the said bills belonging to him is derived from the aforesaid assignment: wherefore the defendant says, the supposed causes of action are not within the jurisdiction of the court, and prays judgment if it will take further cognizance of the suit.

To this plea the plaintiff demurred, and the defendant joined in demurrer, upon which judgment in the court below was given for the defendant.

The only question presented in the case by either of the parties is, whether or not the court below had jurisdiction of the case within the true meaning of the 11th section of the Judiciary Act of 1789, the material part of which is as follows: " Nor shall any

district or circuit court have cognizance of any suit to recover the contents of any promissory note, or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." It is admitted the assignors in this case could not have maintained the suit in the federal courts. We are of opinion that this clause of the statute has no application to the case of a suit by the assignee of a chose in action to recover possession of the thing in specie, or damages for its wrongful caption or detention; and that it applies only to cases in which the suit is brought to recover the contents, or to enforce the contract contained in the instrument assigned.

In the case of a tortious taking, or wrongful detention of a chose in action against the right or title of the assignee, the injury is one to the right of property in the thing, and it is therefore unimportant as it respects the derivation of the title; it is sufficient if it belongs to the party bringing the suit at the time of the injury.

The distinction, as it respects the application of the 11th section of the Judiciary Act to a suit concerning a chose in action is this—where the suit is brought to enforce the contract, the assignee is disabled unless it might have been brought in the court, if no assignment had been made; but, if brought for a tortious taking or wrongful detention of the chattel, then the remedy accrues to the person who has the right of property or of possession at the time, the same as in case of a like wrong in respect to any other sort of personal chattel.

The principle governing the case will be found in cases that have frequently been before us arising out of the assignment of mortgages, where it has been held, if the suit is brought to recover the possession of the mortgaged premises, the assignee may bring the suit in the federal courts, if a citizen of a State other than that of the tenant in possession, whether the mortgagee could have maintained it or not, within this section; but, if brought to enforce the payment or collection of the debt by sale of the premises or by a decree against the mortgagor, then the assignee is disabled, unless the like suit could have been maintained by the mortgagee. 7 Howard 198. This distinction is stated by Mr. Justice Grier, in the case of Sheldon et al. *v.* Sill, 8 Howard, 441. The learned Justice, in delivering the opinion of the court in that case, observed, " that the term chose in action is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises, which confers on one party a right to recover a personal chattel, or sum of money from another, by action." This paragraph has been relied on

to sustain the plea in question; but other portions of this opinion will show, that the phrase "right to recover a personal chattel," was not meant a recovery in specie, or damages for a tortious injury to the same, but a remedy on the contract for the breach of it, whether the contract was for the payment of money, or the delivery of a personal chattel. Indeed, upon a close examination, this is the fair import of the language used, as he was speaking of the contract in the instrument assigned, not of the sale or transfer of it.

We have looked simply at the question of jurisdiction in the case, as that is the only question raised by the plea, and as we are satisfied that the demurrer to it is well taken, the judgment of the court below should be reversed, with costs, and proceedings remitted, with directions that judgment be given for the plaintiff that the defendant answer over.

Mr. Chief Justice TANEY, Mr. Justice CATRON, Mr. Justice DANIEL, and Mr. Justice CAMPBELL, dissented.

Mr. Justice CATRON, dissenting.

The defendant, Dodge, was treasurer and tax-collector of Cuyahoga county, in Ohio, for the year 1852. There was assessed on the tax list of that year, against the Bank of Cleveland, $10,580; against the Merchants Bank of Cleveland, $7,965; on the Canal Bank of Cleveland, $9,216; and on the Commercial Bank of Cleveland, $11,981 — making $38,981.

These respective amounts were distrained in bank-notes from each bank, and deposited by the tax-collector with the Cleveland Insurance Company, to his credit. As the four banks whose property was distrained were incapable of suing the tax-collector (who was citizen of Ohio) in the Circuit Court of the United States, they joined in a written transfer of the bank-notes to John G. Deshler, the plaintiff, a citizen of New York, and he obtained a writ of replevin, and process founded on it, out of the Circuit Court of the United States, and declared as a citizen of New York. The defendant Dodge pleaded in abatement, alleging that the causes of action are not within the jurisdiction of the court; to which plea, there was a demurrer.

The first question is, whether this plea in abatement is the proper defence, or should the plea have been in bar.

The plea sets forth the distress for taxes due and unpaid from the banks to the State; that the defendant Dodge was the tax-collector, and had the proper authority to make the distress, and did distrain, by virtue of his authority. By the laws of England, replevin does not lie for goods taken in execution; nor in

cases where goods are taken by distress according to an act of parliament, this being in the nature of an execution. 7 Bac. Ab. Replevin and Avowry, C. 71; 6 Comyns's Digest, Replevin, D. 218; Ilsley *v.* Stubbs, 5 Mass. Rep. 282, per Parsons, Ch. J.

So the statute of Ohio, under which the proceeding in this case was had, gives the writ of replevin, and prescribes the mode of proceeding, requiring an affidavit from the owner (or his agent) that the goods were his, that they are wrongfully detained by the defendants; " and that said goods and chattels were not taken in the execution, on any judgment against said plaintiff, nor for the payment of any tax, fine, or amercement assessed against the plaintiff;" and it is further provided that any writ of replevin, issued without such affidavit, shall be quashed at the costs of the clerk issuing it; and that he and the plaintiff shall be liable in damages to the party injured. This affidavit, Deshler made, and got the property into his possession on giving bond as the law requires.

The plea distinctly shows that the property was in a condition not to be taken by the writ of replevin, and that the Circuit Court had no jurisdiction to issue the writ, or in anywise interfere with the property by that suit in replevin; and there being no jurisdiction to try title, or proceed further, the plea in abatement was the proper one. And so are the American decisions. Shaw *v.* Levy, 17 Serg. & Rawle, 99.

The next question is, whether these corporations could lawfully assign to a third person their rights of action, to property out of their possession, and held adversely? On common-law principles such an assignment is champerty. Blackstone says, (vol. 4 135,) champart, in French law, signified a similar division of profits: " In our sense of the word it signifies the purchasing of a suit, or right of suing; a practice so much abhorred by our law, that it is one main reason why a chose in action, or thing of which one hath the right, but not the possession, is not assignable at common law; because no man should purchase any pretence to sue in another's right."

I am not aware that this, as a general rule, has been disputed. It therefore follows, as I think, that the assignment was void, and that the causes of action belonged to the four banks as if it had never been made; and they alone, having the right to sue in any form, and being citizens of Ohio, no power to interfere with the tax-collector, Dodge, or the property distrained, existed in the United States court.

A principal objection that I have heard urged is, that as the plea sets forth matter in bar, and commences and concludes in abatement, it is bad for this reason: If we were allowed to rely on such a barren technicality, the assumption is not well found-

ed. In a replevin for goods the defendant may plead property in another (or that the goods were taken in execution) either in abatement or bar. 1 Chit. Pl. 446; Ilsley v. Stubbs, 5 Mass. Rep. 284–5; 1 Johns. Rep. 380; 1 Salk. 5.

As the plaintiff had no title that he could assert, it is of no consequence to him who has, say some of the authorities; but if this second ground was doubtful, it is cured by the act of jeofails.

The thirty-second section of the Judiciary Act declares that no proceeding in civil causes shall be quashed or reversed, for any defect of want of form, but that the courts shall proceed and give judgment according to the right of the cause without regarding such defects, or want of form in any pleading, except in cases of demurrer, where the party demurring shall have specially set down and expressed in his demurrer, the causes thereof. The demurrer here is general, and no mere technicality was allowable.

" The right of the matter in law," in this case, involves a very grave consideration, such as would in all probability deeply disturb the harmony of the Union, if tax-payers in larger classes, could combine together, let their property be distrained, and then assign it to a third person, a citizen of another State, and on the same day, as in this case, take it from the State authority by a federal court writ, and let it be taken beyond the State's jurisdiction.

It was said by the Supreme Court of Pennsylvania, in a case where property had been seized for taxes due, and taken from the officer's possession by a writ of replevin, " that the court will not support this form of action in such a case, nor suffer such an abuse of their process. If one man may bring replevin where his goods have been taken for taxes, so may every other person; and thus the collection of all taxes might be evaded. Independently of the act of assembly we are bound to quash this writ." 3 Yeates's Rep. 82.

I deem the case before us to have been a very disreputable proceeding. The officers of these banks could not make the necessary oath required to obtain a writ of replevin; and to evade the laws of Ohio, the device of an assignment of their separate causes of action to a non-resident was resorted to, who could swear that this property was not distrained for his taxes, and thus apparently comply with the law, so far as an oath was required; whereas he violated its spirit, to bring into a tribunal of the Union a controversy that a State court would not sanction, by practising a fraud on the laws of Ohio, and a fraud on the Constitution of the United States. And what adds to the grossness of this transaction is, the attempt to assign and vest in this plaintiff divers causes of action, by separate assignors, thus seek-

ing to practise champerty, in a form and to an extent not heretofore devised. If four could assign, and their claims be combined in one suit, by the assignee, so could as many hundreds. To sanction the validity of an assignment to a non-resident of property adversely held, and let him sustain a suit for it, would throw open the United States courts to every matter of litigation where property was in dispute exceeding the value of five hundred dollars.

I feel quite confident that the Constitution did not contemplate this mode of acquiring jurisdiction to the courts of the Union, and am·of opinion, that the judgment of the Circuit Court sustaining the plea ought to be affirmed.

Mr. Justice DANIEL.

I also dissent from the opinion of the court in this case, and concur in the views so conclusively taken of it by my brother Catron.

## *Order.*

This .cause came on to be heard on the transcript of the record, from the Circuit Court of the United States for the District of Ohio, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court, in this cause be, and the same is hereby reversed, with costs; and that this cause be, and the same is hereby remanded to the said Circuit Court for further proceedings to be had therein, in conformity to the opinion of this court.