**LE MIEUX BROS., Inc., v. TREMONT LUMBER CO., LIMITED.**

Civ. A. No. 841.

District Court, W. D. Louisiana, Alexandria Division.

Oct. 20, 1943.

Judgment Affirmed Jan. 26, 1944. See 140 F.2d 387.

Deutsch, Kerrigan & Stiles, of New Orleans, for plaintiff.

Theus, Grisham, Davis & Leigh, of Monroe, La., for defendant.

PORTERIE, District Judge.

The Treasury Department of the United States and the Tremont Lumber Company, Limited, a Louisiana corporation, during or about the year 1923, agreed as to the value of the timber owned by the Company on March 1, 1913. The purpose of this agreement was to determine the amount the Company would be entitled, for tax purposes, to deduct annually from its income on account of depletions resulting from the future cutting of the timber owned by the Company on March 1, 1913. It was agreed that there was 1,200,000,000 board feet of timber, that the value of the timber was $5.5625 per thousand feet, and that the total depletion value was $6,675,000. The Company exhausted this depletion value by the end of 1937, but it continued thereafter to take the same unit depletion allowance on its income tax return. These deductions were not allowed by the Collector of Internal Revenue. The Company contended that the value of the timber owned by it on March 1, 1913, was much greater than that reached in its agreement with the Treasury Department in 1923.

We now quote, to complete our narrative of facts, from the petition.

"(Article IX) At the request of defendant (Tremont Lumber Company, Limited), said LeMieux Brothers, Incorporated, a Louisiana corporation, hereinafter referred to simply as said LeMieux Brothers, Incorporated, performed for defendant various services for the purpose of establishing that said timber had a greater value on March 1, 1913, than that arrived at in said 1923 agreement, as aforesaid, and for the

purpose of obtaining an additional depletion allowance for said timber for income tax purposes. (Article X) Said services rendered by said LeMieux Brothers, Incorporated, were many and varied, and included, among others, the making of a complete study and research of the problems presented, making various timber estimates and investigations, appearing before boards and representatives of the Treasury Department, both in New Orleans and in Washington, and in actively participating in the prosecution of said claim for additional depletion allowance. (Article XI) Said LeMieux Brothers, Incorporated, was engaged in performing said services from time to time from the early part of July, 1940, to the early part of the year 1942, (Article XII) As a result of said services and of the efforts of said LeMieux Brothers, Incorporated, in the handling of the matter, said LeMieux Brothers, Incorporated, succeeded in obtaining from the United States Treasury Department a substantial additional depletion allowance for said timber owned by defendant on March 1, 1913. (Article XIII) The additional net depletion allowance granted by said Treasury Department was approximately $681,-000. (Article XIV) Said services rendered by said LeMieux Brothers, Incorporated, are well worth the sum of $68,000. (Article XV) Said LeMieux Brothers, Incorporated, has received $2,689.75 on account of the amount due for said services."

An important fact is that LeMieux Brothers, Incorporated, the Louisiana corporation whose services had been requested and furnished, was dissolved by notarial act, after its work had been completed and after all of its assets, including the claim sued on herein, had been transferred and assigned by it to the plaintiff (LeMieux Brothers, Incorporated, a Delaware corporation). The record discloses that the Louisiana corporation thereafter surrendered its charter and went out of existence. This ends the narrative of facts.

A motion to dismiss for want of jurisdiction has been filed by Tremont Lumber Company, Limited, on several grounds, but only one ground is now being urged and that is based on section 24 of the Judicial Code, 28 U.S.C.A. § 41, reading (quoting only the applicable parts) as follows: "No district court shall have cognizance of any suit * * * to recover upon any * * * chose in action in favor of any assignee * * * unless such suit might have been prosecuted in such court to recover upon said * * * chose in action if no assignment had been made. * * * *"

The Delaware corporation contends that (a) there was no assignment in the instant case, but simply a reorganization and change of domicile, and that (b) the words "chose in action" in the statute are restricted to contract claims and that the claim at issue is not one to fall within the meaning of the above-quoted exception.

■ How may or can there be a "reorganization" when there are two corporations? A reorganization has to be within one corporation; we have here the concurrent existence of two corporations when the assignment is made by the first-born to the second-born. We are unable to follow the argument offered to support the claim that there is no assignment.

Nor may we subscribe to the view that the situation here is identical with the one that exists in those cases when an individual moves from one state to another and there is permitted to maintain an action against the citizen of his former state in the federal court on grounds of diversity. Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758; Anderson v. Splint Coal Co., D.C.E.D.Ky., 20 F.Supp. 233. The case of Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426, involved a change of residence of a corporation—not a person—but within the meaning of Judicial Code, § 37, 28 U.S.C.A. § 80—not within the meaning of section 24.

The person leaving one state and going to another is still the same person; the parallel does not hold, for the Louisiana corporation is a legal entity of its own and the Delaware corporation is entirely a new creation, a separate and absolutely dissociated entity. Much has been done by our courts to give to corporations the attributes of persons under the provisions of our federal Constitution but we do not think that any court may go this far. We certainly will not. We conclude, therefore, as a matter of law, that the Delaware corporation, the plaintiff in the instant suit, is an assignee of the Louisiana corporation.

On the next point made, (b), we find that under the Louisiana law we are confronted with a civil obligation (a true contract) which arose from the consent and from the common intention of the two parties. The Tremont Lumber Company want-

ed this work done; it was the business and within the ability of the LeMieux Brothers, Incorporated, the Louisiana corporation, to perform the work and it agreed to do the work; no price was fixed in advance; there was a meeting of the minds on these three points; and in time the work was done. Obviously, no exact price was fixed in advance because of the difficulty of determining the amount of work necessary and of predicting the degree of its success. It is clear by the agreement that the price to be paid to LeMieux Brothers, Incorporated, the Louisiana corporation, by the Tremont Lumber Company, Limited, was to be gauged, first, by the success attained, that is, the amount of money saved, and secondly, by the length of time and amount of labor devoted to the case. The determination of the price is the only issue of this suit between the two corporations. As a matter of law, we have no misgivings but that this is a suit on simple contract.

Article 1760 of the Louisiana Civil Code reads as follows:

"Civil obligations, in relation to their origin, are of two kinds:

"1. Such as are created by the operation of law.

"2. Such as arise from the consent of the parties who are bound by them, which are called contracts or conventional obligations.

"Each of these divisions will form the subject of a separate title."

Title IV, Of Conventional Obligations, Article 1761, reads as follows: "A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement."

Louisiana lawyers admit generally that the above is not a full list of our types of contracts; that Article 2292 describes other and additional types: "Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place. Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor. The first are such engagements as result from tutorship, curatorship, neighborhood, common property, the acquisition of an inheritance, and other cases of a like nature. The obligations, which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses and quasi offenses."

The contract we have for interpretation is classified purely and unqualifiedly under Article 1760 (2), supra, as well as under the definition of 1761, but certainly not under Articles 2292 and 2293 (Title V, Of Quasi Contracts, and Offenses and Quasi Offenses) of the Civil Code of Louisiana. Students of our Code, when discussing Articles 2292 and 2293, generally refer to Article 1965 as being the real kernel of Louisiana quasi-contracts. We see no quasi-contract in the instant case.

It follows clearly, therefore, that this court may not have cognizance of this suit to recover upon this chose in action in favor of the assignee, the Delaware corporation, since this suit might not have been prosecuted in this court by the Louisiana corporation, from whom the Delaware corporation derived by assignment.

Though we believe the law of contracts of Louisiana controls this case, no different conclusion is reached if the terms of the common law be applied. We quote from 17 C.J.S., Contracts, § 4, p. 317, Implied Contracts Generally, subdivision a: "Implied contracts are frequently spoken of as being divisible into two classes: Contracts implied in fact; and contracts implied in law. However, it is a misnomer to call a contract implied in law an implied contract, for it is wanting in most of the elements of a true contract, and a more accurate designation of the so-called contracts implied in law, and one which is frequently employed, is quasi or constructive contracts."

Then, in the same volume, and under the same subject, at page 318, § 4 we have subdivision b:

"A contract implied in fact is one not expressed by the parties, but implied from facts and circumstances showing a mutual intention to contract. It does not arise contrary to law or the express declaration of the parties. Contracts implied in law or quasi or constructive contracts are distinguishable in that such contracts do not rest on assent of the parties, but may exist regardless of assent.

"Neither a written offer and acceptance nor oral counterparts are essential to establish a contractual relationship, for unambiguous conduct of one party toward another under such circumstances as clearly to manifest an intention that one party perform and that the other party compensate for such performance is sufficient. A 'contract implied in fact,' which term has been

subjected to criticism, or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. It has been said that such a contract must contain all the elements of an express contract, it rests on consent, it is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown. Such a contract does not arise out of an implied legal duty or obligation, but out of facts from which consent may be inferred."

If we should be dealing here with an implied contract, it is quite obvious that it would be classified under the afore-quoted definition as a contract implied in fact and certainly not one implied in law. As a contract implied in fact, it falls into that category of a chose in action which is excepted from our federal jurisdiction under section 24 of the Judicial Code.

■ But, we are not of the opinion that we are dealing with an implied contract of any kind or character. Not that it changes the result, but we think that we are dealing with a pure and fundamental contract, such as is described by the same authority, same volume, at page 310, § 1, subdivision a: "A contract is an agreement which creates an obligation. Its essentials are competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation."

We must analyze some of the cases cited to us.

The case of St. Louis Joint Stock Land Bank of St. Louis v. Fithian, D.C., 43 F. 2d 866, 867, states the law to be (and it is the same in this case) as follows: "The statute forbids jurisdiction in the federal court upon the ground of diversity of citizenship upon an assigned chose in action unless the court would have had jurisdiction in the absence of such assignment."

But in this case, as in the instant case, the facts must be sufficient to place the case without the above rule. The court outlines the contention of plaintiff in the cited case in the following language: "Plaintiff contends that the circumstances under which it acquired the notes and mortgages brings the case within an exception to the rule,

viz., that if the original mortgagee had removed to Missouri subsequent to the taking of the mortgages it would, as a citizen of another state, have a right to bring the suit in the United States court, and that its succession to the assets and liabilities of the Illinois corporation amounted to a merger of the two banks and a de facto removal of the Illinois bank to Missouri."

And the conclusion of the court is: "The court cannot accede to this conclusion. The Illinois bank was incorporated under and in pursuance of an act of Congress, and was later dissolved; as a result of the liquidation the nonresident plaintiff became the owner of the securities, but only by way of an assignment. There was in fact no merger, no de facto removal of the Illinois bank; consequently, its assignee may not maintain a suit upon the ground of diversity of citizenship."

From these facts and conclusions counsel for the Delaware corporation desires us to rule on jurisdiction in its favor. Frankly, we consider the cited case affects the instant case in the opposite manner. We have here, as in the cited case, two separate and distinct corporations; both corporations existed at the time that the assignment of the assets of one, including the chose of action at issue, was made to the other. It matters not that the Louisiana corporation immediately thereafter ceased to exist.

We have to rule, as we have in the Joint Stock Land Bank case, that the case of Brown v. Fletcher, 235 U.S. 589, 35 S.Ct. 154, 59 L.Ed. 374, does not support the court's jurisdiction in the instant case. This case, at page 157 of 35 S.Ct. says: "Giving the words of the statute the most extensive construction authorized by previous decisions, they can only refer to a chose in action based on contract. Kolze v. Hoadley, 200 U.S. 76, 83, 26 S.Ct. 220, 50 L.Ed. 377, 380. The restriction on jurisdiction is limited to cases where A is indebted to B on an express or implied promise to pay; B assigns this debt or claim to C, and C, as assignee of such debt, sues A thereon or to foreclose the security."

As previously stated, with reasons, we are dealing essentially here with a contract, wherein there was an absolute meeting of the minds of the two parties as to what was the work to be done, and as to what was the object of the work—there was a meeting of the minds on the point that the compensation for the work was to be fixed after

the completion of the work. This type of contractual relation, of necessity, is of daily occurrence, especially in the type of work involved in this suit. The fact that at the completion of the work there is a difference of opinion as to what the work is worth does not arise by an implication of fact, or by an implication of law. It is a determination of a part of the original agreement—an item of the contract-content which has to be reached by a decree of court.

■ In the case of Sylvania Industrial Corporation v. Lilienfeld's Estate, 4 Cir., 132 F.2d 887, at page 892, 145 A.L.R. 612, Judge Parker says: "As said by Mr. Justice Nelson in Deshler v. Dodge, 16 How. 622, 630, 14 L.Ed. 1084, the clause of the statute 'applies only to cases in which the suit is brought to recover the contents, or to enforce the contract contained in the instrument assigned.'"

We quote from Ohlinger's Federal Practice, vol. 1, p. 281: "The limitation of the assignment clause applies to suits to recover upon any promissory note or other chose in action founded upon or arising out of contract: Sheldon v. Sill, 1850, 49 U.S. 441, 8 How. 441, 12 L.Ed. 1147; Parker v. Ormsby, 1891, 141 U.S. 81, 11 S.Ct. 912, 35 L.Ed. 654; Realty Holding Co. v. Donaldson, 1925, 268 U.S. 398, 45 S.Ct. 521, 69 L.Ed. 1014."

The cases cited by this textbook writer uphold our disclaimer of jurisdiction. We think the Realty Holding Company case, in particular, is in strong support of such ruling. At page 522 of 45 S.Ct., the two concluding paragraphs of the case are as follows:

"Crown Orchard Co. v. Dennis, [4 Cir.], 229 F. 652, 144 C.C.A. 62, was a suit by the grantee of standing timber to enjoin the cutting and conversion of the timber—in effect, a suit to prevent waste. There was no attempt to enforce any contractual obligation; and the court very naturally held that the case did not fall within the exception in section 24 of the Judicial Code. It was expressly assumed by the court that if the suit had been to enforce a contract or for specific performance, the rule would have been otherwise.

"The distinction is between a cause of action arising out of the ownership or possession of property transferred by the assignment of a contract—in which case the remedy accrues to the person who has the

right of property or of possession at the time—and a suit to enforce the obligations of the assigned contract. Deshler v. Dodge, 16 How. 622, 631, 14 L.Ed. 1084; Ambler v. Eppinger, 137 U.S. 480, 11 S.Ct. 173, 34 L.Ed. 765. The present suit falls within the latter class. It is brought, not to recover property or to redress an injury to property which appellant had acquired through an assignment of a lease, but to enforce contractual obligations of the lease."

When the Supreme Court of the United States, in the case of Ambler v. Eppinger, 137 U.S. 480, 11 S.Ct. 173, at page 174, 34 L.Ed. 765, maintained jurisdiction in a suit to recover damages for the value of trees and logs wrongfully cut from plaintiff's lands, it was said: "The construction given by this court in Deshler v. Dodge, 16 How. 622 [14 L.Ed. 1084], to the clause in the eleventh section of the judiciary act, which denied to any circuit or district court 'cognizance of any suit to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made except in cases of foreign bills of exchange,' is in harmony with the construction we give to the act of 1887 [28 U.S.C.A. § 41(1)]. It was there held that the exception by that section of the jurisdiction of those courts of suits by an assignee did not extend to a suit on a chose of action to recover possession of a specific chattel or damages for its wrongful caption or detention, although the assignee could not himself sue in that court. And in the subsequent case of Bushnell v. Kennedy, 9 Wall. 387 [19 L.Ed. 736], it was said that the exceptions to the jurisdiction applied only to rights of action founded on contracts which contained within themselves some promise or duty to be performed, and not to mere naked rights of action founded on some wrongful act or some neglect of duty to which the law attaches damages."

The converse result (jurisdiction not maintained) is to obtain in the instant case, because "the exceptions to the jurisdiction applied only to rights of action founded on contracts which contained within themselves some promise or duty to be performed."

The case of Massey-Harris Harvester Co., Inc., v. Freeze, 10 Cir., 37 F.2d 235, though cited in support of our having ju-

risdiction in the instant case, we do not think favors the plaintiff. In this above-cited case the court held that the relation between the assignor and the defendant was quasi-contractual; and correctly so, because the plaintiff's assignor in that case had turned over a sum of money to defendant in an agreement that the defendant should distribute and pay over the sum to the assignor's creditors. It followed later that the defendant fraudulently had failed to make this distribution. The indirect obligation (not specified in the original agreement) that arises equitably out of the cited case, to return the money, is entirely different from the direct obligation in the instant case (specified in the original agreement) to pay for the work done. In the instant case, the very heart of the original bargain between the two contractants is the subject-matter of the assignment; nothing arises by implication of fact or by operation of law. There is nothing left to implication.

The better comparison is had by quoting lengthily from the cited case (derived from the Ambler v. Eppinger, the Deshler v. Dodge, and the Bushnell v. Kennedy cases, supra), at page 237 of 37 F.2d: "The same principle was again announced in Brown v. Fletcher, 235 U.S. 589, 35 S.Ct. 154, 59 L.Ed. 374. There was no contractual relation in fact between Blaser and Freeze for a return of the money, and hence Blaser had no chose in action against Freeze. The agreement was to the contrary, that Freeze should pay all of it to Blaser's creditors. When he failed to do so the law made it the duty of Freeze to return the money in hand to Blaser. Their relation in that respect is described by present-day authority as quasi-contractual. City of New York v. Davis [2 Cir.], 7 F. 2d 566, 573. But no authority, so far as we are advised, has held that it created a chose in action in behalf of Blaser, and we think it did not within the meaning of said section 41 (28 U.S.C.A.). The contractual relation is a mere fiction. The Ninth Circuit held in Menasha Wooden Ware Co. v. Southern Oregon Co., 244 F. 83, that an action for money had and received was not a chose in action within the meaning of the Code section. It would seem to follow that the objection is not well taken, whether the assignment be regarded as Blaser's right and interest in the $3,535.69 or of his right of action against Freeze. Neither contention being sustainable, the order of dismissal is reversed with directions to re-instate said third cause of action, overrule the demurrer thereto and permit defendant to plead."

Both sides refer to the case of Granger v. Fontenot, La.App., 3 So.2d 215, quoting from it at page 216: "It is true that there can be no recovery on a quantum meruit unless there was a contract either express or implied between the parties, or unless the services rendered by the plaintiff or the use of his property inured to the benefit of the defendant under such circumstances as to imply an obligation to pay for it. Duncan v. Blackman, 3 La.App. 421. But certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place. C.C. art. 2292. Among this kind of obligation is that arising from a quasi contract."

We hold in the instant case that (a) there was a full express contract, or alternatively, but secondarily (b) a contract implied in fact, and undebatably that (c) there was no contract by operation of law. We see nothing in this Granger case to controvert the conclusions of this opinion. We do adhere basically to the thought that the quantum meruit feature was actually a part of the original contract—that it does not arise by implication.

Though the case of New Orleans Commercial Corporation v. City of Albertville, Alabama et al., D.C.N.D.Ala., 32 F.Supp. 9, is one merely from a district court of the United States, and, additionally, in the main hinges on a different point from that which is the point in the instant case, we like it because the facts are somewhat similar to those of the instant case in that one party to the original contract performed a certain work (the construction of an electric distribution system) and the other party to the contract was to pay a fixed amount of money. Yet the court at page 11 [5] of 32 F.Supp., definitely concludes: "Therefore in the present case, since this is a suit on a domestic chose in action by an assignee, and even though made by a corporation (since it is not a bearer instrument), the court has no jurisdiction if the original assignor could not have maintained the suit in this court. The original assignor appears, and is alleged, to be a resident citizen of Alabama, as is one of the defendants. These facts being admitted, the action should be dismissed for want of jurisdiction through the effect of the assignee clause of Section 41 (1) of Ti-

tie 28, U.S.C., 28 U.S.C.A. § 41 (1), and a failure of the requisite diversity of citizenship on which the suit is based."

Though we believe the instant case is clearly and conclusively not within our jurisdiction, we quote what becomes the applicable language of a past case, should the question of jurisdiction enter the sphere of doubt: "In discussing the case we have endeavored to observe the rule so often expressed by the national courts that, where the question of jurisdiction is presented, we are confronted with the presumption that the cause is without the jurisdiction of the court, unless the contrary affirmatively appears." Utah-Nevada Co. v. De Lamar, 9 Cir., 133 F. 113, 123, writ of certiorari denied De Lamar v. Utah-Nevada Co., 199 U.S. 605, 26 S.Ct. 746, 50 L.Ed. 330.

Counsel for the Delaware corporation, during the argument, which followed niceties of differentiation which apparently were necessary in order to maintain the present contract from being classified as a chose in action without the jurisdiction of this court, was led to make the very meaningful suggestion that it would only be after the court has heard all the facts of the case that it could correctly pass on the question of jurisdiction. Granting the point to the attorney, then, obviously, the jurisdiction is in doubt; it follows that the above quotation becomes quite applicable.

The motion to dismiss is, therefore, sustained. Please present judgment accordingly.