PLANT INVESTMENT COMPANY *v.* JACKSON-VILLE, TAMPA AND KEY WEST RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

No. 226.  Argued January 24, 1894. — Decided March 5, 1894.

A Circuit Court of the United States has no jurisdiction over a suit to enforce a contract for the conveyance of land brought in the State where the land is situated by the assignee of one party to the contract against the other party, if both parties to the contract are citizens of the same State, although the assignee is a citizen of a different State.

THE case is stated in the opinion.

*Mr. John E. Hartridge,* (with whom was *Mr. R. G. Erwin* on the brief,) for appellant.

*Mr. Charles M. Cooper,* (with whom was *Mr. J. C. Cooper* on the brief,) for the trustees of the internal improvement fund of Florida, appellees.

MR. JUSTICE FIELD stated the case, and delivered the opinion of the court.

This case comes to us on appeal from the decree of the Circuit Court for the Northern District of Florida sustaining the demurrer to the bill of complaint and dismissing the suit. The bill was brought to enforce the conveyance of certain lands in Florida, pursuant to the contract of the trustees of the internal improvement fund of Florida, made pursuant to certain statutes of that State, with the Jacksonville, Tampa and Key West Railway Company, a corporation created under its laws, the beneficial results of which contract are claimed by the complainant.

The facts out of which the suit arises are given at length in the bill, and, as there set forth, may be briefly stated so far as is necessary for the presentation of the question of jurisdiction, upon which the demurrer turned.

The Plant Investment Company, the complainant, is a corporation under the laws of Connecticut, having its principal office at New Haven. The defendants are the Jacksonville, Tampa and Key West Railway Company, and the trustees of the internal improvement fund of Florida, citizens and residents of that State.

The bill of complaint sets forth: That the general assembly of Florida, by an act of January 6, 1855, "to provide for and encourage a liberal system of internal improvements in the State," declared that the lands granted to the State by the acts of Congress of March 3, 1845, and September 28, 1850, together with the proceeds thereof, accrued or that might thereafter accrue, should be set apart and made a separate fund, to be called the internal improvement fund of the State; and that, for the purpose of assuring a proper application of the fund for the objects mentioned, the lands and the funds arising from the sale thereof, after paying the necessary expenses of selection, management, and sale, should be vested in five trustees, to wit, in the governor of the State, the comptroller of public accounts, the state treasurer, the attorney general, and the register of state lands, and their successors in office, to hold the same for the uses provided in the act; and by its twenty-ninth section, the general assembly reserved the right to grant to such railroad companies, thereafter chartered, as

they might deem proper, upon their compliance with the pro-
visions of the act as to the manner of constructing the road
and the drainage of the land, the alternate sections of the
"swamp and overflowed lands" for six miles on each side of
the line of the road of any such company.   That the Jackson-
ville, Tampa and Key West Railway Company was incorpo-
rated in March, 1878, under the general corporation act of the
State of February, 1874, by the name of the Tampa, Peace
Creek and St. John's River Railroad Company.   That the
legislature of Florida by act of March 4, 1879, granted to
that company alternate sections of the lands given to the
State by the act of Congress of September 28, 1850, within
six miles on each side of the track or line of its road, provided
that the company should comply with the specified provisions
of the act of January 6, 1855; and further granted to the
company, in consideration of the greatly improved value which
would accrue to the State from the construction of the road,
ten thousand acres of the same class of lands for each mile of
road it might construct, such lands to be of those nearest to
the line of the road, its branches and extensions, this last-
named grant being made subject to the rights of all creditors
of the internal improvement fund and to the trusts to which
the fund was applicable under the act of January 6, 1855.
That on the 27th of June, 1881, the Tampa, Peace Creek and
St. John's River Railroad Company, by a resolution of its
board of directors, changed its corporate name to Jacksonville,
Tampa and Key West Railway Company, and on the 23d of
August, 1881, filed a plat of its route with the trustees of the
internal improvement fund; and on the first of September,
1881, the trustees passed a resolution reserving from sale for
the benefit of the company the even-numbered sections of land
for six miles on each side of its line, and again on the 21st of
September, 1881, acting under the provisions of the act of the
legislature of March 12, 1879, "to amend section 26 of the act
'to provide a general law for the incorporation of railroads
and canals,' and to grant aid to railroads and canals incorpo-
rated under said act," they passed a resolution to reserve from
sale, to further aid in the construction of the road, a quantity

of lands in the even-numbered sections within twenty miles of said road sufficient to supply the deficiency existing in the even-numbered sections within six miles of the road.

The bill further avers that in 1883 the complainant entered into a contract with defendant company to construct the southern division of its road, to extend from the waters of Tampa Bay, in Hillsborough County, to Kissimmee City, in Orange County, with a branch to or near Bartow, in Polk County, and by that contract was to receive, as a part of the consideration for the construction of the road, all the alternate sections of land to which defendant company was or might be entitled under any of the aforesaid acts and any of the laws of Florida for its construction; that the resolutions passed by the board of trustees September 21, 1881, had been published in the report of its official proceedings, and submitted to the legislature in January, 1883, with the reports of the heads of departments of the state government, and went forth to the world unchallenged as the official action of the trustees, with the silent approval of the legislature; and the complainant, relying on the provisions of the acts of March 4 and 12, 1879, and the resolutions of the trustees, was induced to enter into its contract with the defendant company, believing that it would receive all the lands contemplated by those acts and resolutions; that to carry out the contract made between the complainant and the defendant company, the board of directors of that company passed a resolution in November, 1883, requesting and directing the trustees of the internal improvement fund to convey to the complainant all the alternate sections of land to which the defendant company was or might be entitled by reason of the construction of the said railroad from Tampa to Kissimmee City and its branch, and a copy of that resolution was presented to the trustees and entered in the minutes of their proceedings; that, as soon as practicable, after making the contract, complainant commenced the construction of the road and completed the line from Tampa to Kissimmee, a distance of seventy-five miles, by the following January; and the completion of the road being

reported to the trustees, the state engineer was directed to inspect the same, which he did, and approved it as being built according to the specifications required; whereupon the trustees accepted the same.

That when the complainant applied for the lands which it claimed under the contract with defendant company, it discovered that not only the lands in the even sections within twenty miles, but also within six miles of the road, had been selected by one Hamilton Disston, to whom the board of trustees had contracted to sell four million acres of land to pay off a large indebtedness of their fund, as a part of his purchase; that the complainant protested to the trustees against permitting said Disston to take these lands, but the trustees decided that the claim of said Disston for any lands outside the six-mile limit of said road should take precedence of the claim of the defendant company, and of the complainant contractor thereunder.

The bill further sets forth that in February, 1884, the trustees conveyed to the complainant the lands granted to the State by the act of September 28, 1850, lying in the even-numbered sections and within six miles of the line of that portion of the road constructed which then remained undisposed of, viz., 123,481 acres, for the entire seventy-five miles of the road; and that the complainant is advised and believes that, under the grant of the alternate sections, the defendant company is entitled to 3840 acres of land for each mile of road it constructed, and that, where there is not sufficient land in the alternate sections within six miles of the line of the road to make that quantity, the deficiency can be made up from the alternate sections within twenty miles, under the act of March 12, 1879, and resolution of September 21, 1881; and that the complainant under its contract with the defendant company has the same right for such part of the road as it has constructed, and alleges that there is a deficiency in the quantity of land to which it is entitled of about 160,000 acres. After stating other matters not material for the consideration of the question presented for our determination, the bill prays that the trustees of the internal im-

provement fund be compelled to convey to complainant the
necessary lands to make up to the complainant the deficiency
claimed, according to the terms of their contract with the
defendant railroad company; the complainant asserting its
right to the lands necessary to make up this deficiency by
virtue of its contract with the defendant railroad company for
the construction of the road.

To this bill the defendant trustees of the internal improve-
ment fund demurred, on the ground, among others, that the
court had no jurisdiction in the premises.

The contract between the trustees of the internal improve-
ment fund of Florida and the defendant railroad company,
being a contract between citizens and residents of the same
State, could not be enforced by suit in a Federal court. The
complainant, the Plant Investment Company, claims the ben-
efit of that contract, and seeks to have it enforced for its
benefit. It occupies, in fact, the position of assignee of that
contract, its only right to the lands depending upon its valid-
ity. But it cannot enforce the contract in the Federal court;
because, by section 629 of the Revised Statutes, it is provided
that no Circuit Court shall have cognizance of any suit to
recover the contents of any promissory note, or other *chose in
action* in favor of an assignee, unless a suit might have been
prosecuted in such court to recover the said contents if no
assignment had been made, except in cases of foreign bills of
exchange. And the same provision is contained in the act of
March 3, 1887, c. 373, 24 Stat. 552, amendatory of the act to
determine the jurisdiction of the Circuit Courts of the United
States. As we said in the case of *Shoecraft* v. *Bloxham*, 124
U. S. 730, 735, "the terms used — 'the contents of any prom-
issory note or other *chose in action*' — were designed to em-
brace the rights the instrument conferred which were capable
of enforcement by suit. They were not happily chosen to
convey this meaning, but they have received a construction
substantially to that purport in repeated decisions of this
court." And in support of this doctrine the case of *Corbin* v.
*County of Black Hawk*, 105 U. S. 659, was cited. In that
case a suit brought to enforce the specific performance of a

contract was held to be a suit to recover the contents of a *chose in action*, and therefore could not be maintained under the statute in question in a Federal court in the name of the assignee, if the assignor could not have maintained such suit.

The complainant is not, it is true, designated in the pleadings or in any formal instrument as assignee of the contract between the trustees of the internal improvement fund and the defendant railway company, but the term "assignee" in the statute covers not merely persons to whom is technically transferred the contract in controversy, but any one who, by virtue of any transfer to him, can claim its beneficial interest. The contract under which the complainant claims, to wit, its contract with the defendant company for the construction of the road, transferred to it the beneficial interest of that company in the lands covered by its contract with the trustees, and therefore brings the suit within the prohibition of section 629 of the Revised Statutes.

It follows that the Circuit Court had no jurisdiction of this case in the name of complainant, but as the decree below dismissed the bill generally, that decree is reversed at the costs of appellant, and the cause remanded with a direction to dismiss the bill for want of jurisdiction and without prejudice.

*Dismissed.*