# BROWN, AND SCHERMERHORN, TRUSTEE UNDER WILL OF CUNNINGHAM, v. FLETCHER, TRUSTEE OF BRAKER.

## PROVIDENT LIFE AND TRUST COMPANY AS EXECUTOR OF WOOD v. SAME.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 454, 455.   Argued December 1, 1914.—Decided January 5, 1915.

The prohibition against the Federal court entertaining jurisdiction of actions brought by assignees to recover upon a promissory note or other chose in action, as now embodied in § 24, Judicial Code, does not apply to a suit to recover a specific thing or damages for its wrongful detention or caption.

Under § 294, Judicial Code, which is the statutory rule for construing that Code, the slight changes between the wording of the act of 1887 and that of § 24, Judicial Code, in regard to jurisdiction of the Federal court of suits by assignees was not intended to bring about any change in the law but merely the continuation of the existing statute.

Federal Statutes have always permitted the vendee or assignee to sue in the United States courts to recover property or an interest in property when the requisite value and diversity of citizenship existed. *Barney* v. *Baltimore*, 6 Wall. 280.

Section 24, Judicial Code, does not deprive the District Court of jurisdiction to enforce an interest under an assignment by the *cestui que trust* of an interest in the estate to which the latter has a fixed right in the future. Such an assignment is not a chose in action payable to the assignee within the prohibition of § 24, but an evidence of the assignee's right, title and estate in the property.

CONRAD BRAKER, JR., of New York, died testate July 21, 1890. The fifteenth item of his will provided that the sum of $50,000 should be held in trust and securely invested for the use of his son, Conrad Morris Braker, who was to receive the income until he attained the age of fifty-five, when the "principal should be paid to him and belong to him absolutely." If he failed to reach that age the property was to be held for the benefit of his wife for life with remainder to Henry Braker.

The sixteenth item directed that "one-half of all the rest, residue and remainder, both real and personal," of his estate should be held in trust for the use and benefit of Conrad Morris Braker, who was to receive the interest derived from said trust, until he attained the age of fifty-five when "the whole amount, less $25,000, shall be paid and belong to him absolutely." If he failed to reach that age then the property was to pass to another son.

The amount realized from the residuum, described in the sixteenth item, aggregated $120,000, and with the $50,000 described in the fifteenth item of the will, was invested in property (not described) which is now held by Austin B. Fletcher, the duly appointed Testamentary Trustee.

On April 18, 1901, Conrad Morris Braker assigned to

Frank L. Rabe "seven-tenths of all the estate, right, title and interest which he had in and to the principal sum of $50,000 described in the 15th item of the will." Thereafter Rabe transferred and assigned this interest to the New York Finance Company.

On February 25, 1902, Conrad Morris Braker executed an instrument in which, subject to the assignment of $35,000 above referred to, he "granted, bargained, sold, assigned, transferred and set over to the New York Finance Company all of his estate, right, title and interest of any kind, form or description whatsoever to the amount or extent of $35,000 in and to the legacy of $50,000, and also in and to a legacy of the part or share of the residuary estate to which he was entitled under and by virtue of the fifteenth and sixteenth paragraphs of the will of Conrad Braker, Jr., deceased."

By virtue of these two transfers the New York Finance Company claimed to be the owner of such interest in the fund or estates created under the fifteenth and sixteenth items of the will.

The Finance Company thereafter made a note for $15,000, payable to William Brewster Wood, and secured the same by a transfer of its interests under the sixteenth item. It also made another note for $10,000 to Brown, and Schermerhorn, Trustee for Clara Schermerhorn, and secured the same by a transfer of its interest under the fifteenth item.

These notes were not paid when they fell due and the New York Finance Company's equity of redemption was acquired by the respective holders of the two notes. In February, 1913, when Conrad Morris Braker attained the age of fifty-five, the respective holders of the notes and assignments demanded that the Trustee should pay over to them that to which they were entitled by virtue of the instruments aforesaid. The Trustee refused to comply and thereupon the Executors of Wood and the

Trustees of Clara Schermerhorn (all of whom were citizens and residents of Pennsylvania) brought suit in the United States District Court for the Southern District of New York against Fletcher, Trustee, and Conrad Morris Braker, beneficiary, both being citizens and residents of New York.

The two Bills were each prepared by the same counsel and were identical except that the Trustees of Schermerhorn sued for what had been assigned them under the fifteenth item. The Executors of Wood sued for the interest assigned them in the money or property mentioned in the fifteenth and sixteenth items of the will. In both suits it was alleged that the Complainants had acquired title by virtue of the sale, transfer and assignment executed by Conrad Morris Braker, and subsequent mesne conveyance. It was alleged that Complainants had been informed that he claimed the transfers signed by him to be void because made to secure usurious debts. Both Bills prayed that Braker should be enjoined from litigating the question of title in any other court; that the complainants' right under the assignments should be established by final decree, and that Fletcher, the Testamentary Trustee, should be ordered to pay over to the complainants what was due them by virtue of the respective assignments from Braker.

The court dismissed both bills and in each case gave a certificate that the order was based "solely on the ground that no jurisdiction of the District Court existed."

From that order the complainants appealed to this court.

*Mr. Charles H. Burr*, with whom *Mr. Frederic W. Frost, Mr. Perry D. Trafford* and *Mr. H. Gordon McCouch* were on the brief, for appellants:

The interpretation placed upon the provisions of § 629, Rev. Stat. (now § 24, 1st subd. Jud. Code) by this court in *Ingersoll* v. *Coram*, 211 U. S. 335, is decisive of the jurisdictional questions in this case.

An interest in a distributive share of an estate (*a fortiori* in a trust fund) is not within the statute.

The prohibition is against suits by "an assignee," and neither an administrator nor an executor are regarded as assignees within the statute.

In support of these contentions see *Ambler* v. *Eppinger*, 137 U. S. 480; *Bertha Zinc & Mineral Co.* v. *Vaughan*, 88 Fed. Rep. 566; *Brown* v. *Fletcher*, 206 Fed. Rep. 461; *Bushnell* v. *Kennedy*, 9 Wall. 387; *Chappedelaine* v. *Dechenaux*, 4 Cr. 308; *Coal Company* v. *Blatchford*, 11 Wall. 172; *Croxall* v. *Shererd*, 5 Wall. 268; *Deshler* v. *Dodge*, 16 How. 622; *Fourth Street Bank* v. *Yardley*, 165 U. S. 634; *Rice* v. *Houston*, 13 Wall. 66; *Sere* v. *Pitot*, 6 Cr. 333.

*Mr. William P. S. Melvin*, with whom *Mr. Safford A. Crummey* was on the brief, for appellees:

The present statute fixing the jurisdiction of District Courts is unqualified in its expression that they cannot take cognizance of a suit to recover upon a chose in action in favor of any assignee unless such suit might have been prosecuted in the court if no assignment had been made. See § 24, Jud. Code, 1st subd.; § 11, Judiciary Act, 1789, 1 Stat. 78; Act of March 3, 1887; Act of August 13, 1888; *Sere* v. *Pitot*, 6 Cr. 335; *Corbin* v. *Black Hawk Co.*, 105 U. S. 659; *Shoecraft* v. *Bloxham*, 124 U. S. 730; *Deshler* v. *Dodge*, 16 How. 622; *Bushnell* v. *Kennedy*, 9 Wall. 387; *Ambler* v. *Eppinger*, 137 U. S. 480; and *Bertha Zinc Co.* v. *Vaughan*, 88 Fed. Rep. 566.

This court early defined what is a "chose in action" as the term is used in the statute, and the term has a familiar meaning in our law literature and decisions.

The term is one of comprehensive import. It includes all the infinite varieties of contracts, covenants and promises which confer on one party a right to recover a personal chattel or a sum of money by action. *Sheldon* v. *Sill*, 8 How. 441; *Bushnell* v. *Kennedy*, 9 Wall. 387;

*United States* v. *Moulton*, 27 Fed. Cas. 11, 12; *Mercantile
Trust Co.* v. *Gumbernat*, 143 N. Y. App. Div. 308; Bouvier's
Law Dictionary; 2 Blackstone Comm. 389, 397; *Ayers* v.
*West R. R.*, 48 Barb. 135; *Gillett* v. *Fairchild*, 4 Den. 80;
*Haskell* v. *Blair*, 57 Massachusetts, 534, 536; *Prudential
Life Ins. Co.* v. *Hann*, 21 Ind. App. 525; *Steele* v. *Gablin*,
115 Georgia, 929; 3 Am. & Eng. Ency., 1st ed. Sub. Tit.
"Choses in Action," 236; *Brown* v. *Fletcher*, 206 Fed. Rep.
461.·

Equitable assignments of choses in action, as well as
legal assignments, are comprehended within the applica-
tion of the statute.  *Sere* v. *Pitot*, 6 Cr. 333; *Corbin* v.
*Black Hawk County*, 105 U. S. 659.

*Ingersoll* v. *Coram*, 211 U. S. 335, is not adverse to the
appellees' contention.  The circumstances are totally
different.

  MR. JUSTICE LAMAR, after making the foregoing state-
ment, delivered the opinion of the court.

  The appellants brought suit in the United States Dis-
trict Court for the Southern District of New York for the
purpose of recovering from the Trustee an interest in a
trust estate which had been sold, transferred and assigned
by Conrad Morris Braker, the beneficiary.  The com-
plainants were citizens and residents of Pennsylvania.
Both defendants were citizens and residents of New York.
Notwithstanding the diversity of citizenship, the court
dismissed the bill on the. ground that, as the assignor
Braker, a citizen of New York, could not in the United
States District Court, have sued Fletcher, Trustee and
citizen of the same State, neither could the Complainants,
his assignees, sue therein, even though they were residents
of the State of Pennsylvania.

  The appeal from that decision involves a construction of
§ 24 of the Judicial Code, which limits the jurisdiction of

the United States District Court when suit is brought therein . . . "to recover upon any promissory note or other chose in action in favor of any assignee. . . ."[1]

This section of the Judicial Code is the last expression of a policy intended to prevent certain assignees from proceeding in the United States courts.

The restriction was imposed not only to prevent fraudulent transfers, made for the purpose of conferring jurisdiction, but in apprehension that promissory notes and like papers might be transferred in good faith by the citizens of one State to those of another, and thus render the maker liable to suit in the Federal court. *United States Bank* v. *Planters' Bank*, 9 Wheat. 904, 909.

Except for a short time when the act of March 3, 1875, c. 137, 18 Stat. 470, restricted suits "founded on a contract in favor of an assignee," the several statutes on the subject, in force prior to the adoption of § 24, made this limitation on the jurisdiction of United States courts apply to "any suit to recover the contents of any promissory note or other chose in action in favor of any assignee" (Act of September 24, 1789, c. 20, 1 Stat. 73, 78, § 11; Rev. Stat., § 629; Act of March 3, 1887, c. 373, 24 Stat. 552; Act of August 13, 1888, c. 866, 25 Stat. 433, 434). These were technical terms of variable meaning. They might have been given a literal construction, in which case the act would not have wholly remedied the evil intended to be corrected. They were also susceptible of a construction so broad as to include subjects far beyond the congressional policy. For a "chose in action embraces in

---

[1] ". . . No district court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made." 36 Stat. 1091.

one sense all rights of action." *Dundas* v. *Bowler*, 3 McLean, 204, 208. So that if the words of the statute had been given their most comprehensive meaning every assignee or vendee would have been prevented from suing in the United States court unless the assignor could have maintained the action. It is evident, however, that there was no intent to prevent assignees and purchasers of property from maintaining an action in the Federal court to recover such property, even though the purchaser was an assignee and the deed might, in a sense, be called a chose in action.

On the other hand, to construe the statute so as to only prohibit suits in such courts by the assignees of notes, drafts and written promises to pay, would have left open a wide field and enabled assignees of accounts and of claims arising out of breaches of contracts to proceed in the Federal courts, although the parties to the original agreement could not have there sued.

While, therefore, it was admitted in *Sere* v. *Pitot*, 6 Cranch, 332, that suits to recover the "contents of a chose in action" referred to "assignable paper," yet, in view of the general policy of the Act, these words were given a construction so broad as to include suits on accounts and on claims other than those containing written promises to pay.

That ruling, though criticized in *Bushnell* v. *Kennedy*, 9 Wall. 387, 393, was constantly followed (*Sheldon* v. *Sill*, 8 How. 441; *Shoecraft* v. *Bloxham*, 124 U. S. 730), and it has been settled that the prohibition applied not only to suits on instruments which might be said to have "contents," but also to suits for the recovery of "all debts, and all claims for damages for breach of contract, or for torts connected with a contract . . . but . . . not to suits to recover the specific thing or damages for its wrongful caption or detention." *Bushnell* v. *Kennedy*, 9 Wall. 387, 390, 391. *Ibid.* 392. Neither did it apply to suits

for damages for neglect of duty. *Deshler* v. *Dodge*, 16 How. 622, 631; *Ambler* v. *Eppinger*, 137 U. S. 480.

Such is still the law under §24; for, according to the statutory rule for construing the Judicial Code [1] it may be assumed that the slight difference in language between the act of 1887 ("contents of a chose in action in favor of the assignee") and §24 ("suits upon a chose in action in favor of an assignee") was not intended to bring about any change in the law, but merely as a continuation of the existing statute. In continuing the statute Congress also carried forward the construction that the restriction on jurisdiction applied to suits for damages for breach of contract, but did not apply to suits for a breach of duty nor for a recovery of things. It therefore becomes necessary to determine whether these proceedings by Bill in Equity are suits by assignees on a chose in action; or, suits for the recovery of an interest in property by the transferee or assignee.

From the allegations of the two bills it appears that the $50,000, mentioned in the fifteenth item, and the $120,000, proceeds of the residuum of the estate referred to in the sixteenth item, had each been invested by the Trustee—but whether in real estate, tangible personal property, stocks or bonds is not stated.

If the trust estate consisted of land it would not be claimed that a deed conveying seven-tenths interest therein was a chose in action within the meaning of §24 of the Judicial Code. If the funds had been invested in tangible personal property, there is, as pointed out in the *Bushnell Case*, nothing in §24 to prevent the holder

---

[1] "Sec. 294. The provisions of this act, so far as they are substantially the same as existing statutes, shall be construed as continuations thereof, and not as new enactments, and there shall be no implication of a change of intent by reason of a change of words in such statute, unless such change of intent shall be clearly manifest." 36 Stat. 1167.

by virtue of a bill of sale from suing for the "recovery of
the specific thing or damages for its wrongful caption or
detention." And if the funds had been converted into
cash, it was still so far property—in fact instead of in
action—that the owner, so long as the money retained its
earmarks, could recover it or the property into which it
can be traced, from those having notice of the trust. In
either case, and whatever its form, trust property was held
by the Trustee,—not in opposition to the *cestui que trust*
so as to give him a chose in action, but—in possession for
his benefit in accordance with the terms of the testator's
will.

It is said, however, that this case does not relate to the
sale of land, or of things, or even to a transfer of a definite
fund, but to two assignments of $35,000,—to be made out
of money or property in the hands of a trustee. It is
claimed that this was an assignment of a chose in action
within the meaning of § 24 of the Judicial Code. Giving
the words of the statute the most extensive construction
authorized by previous decisions, they can only refer to
a chose in action based on contract. *Kolze* v. *Hoadley*,
200 U. S. 76, 83. The restriction on jurisdiction is limited
to cases where A is indebted to B on an express or implied
promise to pay; B assigns this debt or claim to C, and C
as assignee of such debt sues A thereon or to foreclose
the security. Or where A has contracted with B and B
assigns the contract to C who sues to enforce his rights,
by Bill for specific performance or, by an action for dam-
ages for breach of the contract. *Shoecraft* v. *Bloxham*, 124
U. S. 730, 735.

But here there was no contract and this is not a suit
for a breach of a contract. For whatever may have been
the earlier view of the subject (Holmes Common Law, 407,
409) the modern cases do not treat the relation between
Trustee and *cestui que trust* as contractual. The rights of
the beneficiary here depended not upon an agreement

between him and Braker, but upon the terms of the will creating the trust and the duty which the law imposed upon the Trustee because of his fiduciary position. And a proceeding by the beneficiary or his assignee for the enforcement of rights in and to the property, held—not in opposition to but—for the benefit of the beneficiary, could not be treated as a suit on a contract, or as a suit for the recovery of the contents of a chose in action, or as a suit on a chose in action. *Upham* v. *Draper,* 157 Massachusetts, 292; *Herrick* v. *Snow,* 94 Maine, 310. See also *Edwards* v. *Bates,* 7 Man. & G. 590; *Nelson* v. *Howard,* 5 Maryland, 327.

The beneficiary here had an interest in and to the property that was more than a bare right and much more than a chose in action. For he had an admitted and recognized fixed right to the present enjoyment of the estate with a right to the corpus itself when he reached the age of fifty-five. His estate in the property thus in the possession of the Trustee, for his benefit, though defeasible, was alienable to the same extent as though in his own possession and passed by deed. *Ham* v. *Van Orden,* 84 N. Y. 257, 270; *Stringer* v. *Young, Trustee,* 191 N. Y. 157; *Lawrence* v. *Bayard,* 7 Paige, 70; *Woodward* v. *Woodward,* 16 N. J. (Eq.) 83, 84. The instrument by virtue of which that alienation was evidenced,—whether called a deed, a bill of sale, or an assignment,—was not a chose in action payable to the assignee, but an evidence of the assignee's right, title, and estate in and to property. Assuming that the transfer was not colorable or fraudulent, the Federal statutes have always permitted the vendee or assignee to sue in the United States courts to recover property or an interest in property when the requisite value and diversity of citizenship existed. *Barney* v. *Baltimore,* 6 Wall. 280. The equity jurisdiction of such courts extends to suits by heirs against executors and administrators (*Security Co.* v. *Black River Bank,* 187 U. S. 211, 228) and to suits against

Trustees for the recovery of an interest in the trust property by the beneficiary or his assignee.

The conclusion that § 24 of the Judicial Code did not deprive the District Court of jurisdiction, to enforce complainants' interest under the assignments executed by the *cestui que trust*, was foreshadowed in *Ingersoll* v. *Coram*, 211 U. S. 335, 361. That was a proceeding by an assignee to enforce an equitable lien on an heir's interest in an estate. In that case it was claimed that because the assignor could not have sued in the United States court, neither could the assignee maintain his Bill therein. The case was disposed of on another ground but the court said that "it is certainly very disputable if an interest in a distributive share of an estate is within the statute."

That language was used in reference to a suit for the recovery of part of a fund in the hands of an executor, who held primarily for the payment of the testator's debts. There the legatees, distributees and assignees had no such vested interest in specific property as is the case here where all of the property in the hands of the Trustee was held for the purpose of paying the income to Braker until he reached the age of fifty-five, when the corpus was to be delivered to him [or to his assignees] in fee. That interest was transferable and the purchaser was not precluded by § 24 from suing in the United States court for the interest so transferred.

This view of the record makes it unnecessary to discuss the question as to whether the Executors of Wood could in any event be treated as assignees of the character referred to in § 24 (*Chappedelaine* v. *Dechenaux*, 4 Cranch, 305, 306), since their title was cast upon them by operation of law. The nature of the case is also such that we cannot consider the effect of an assignment of $35,000 out of the $50,000, if it shall appear that the trust estate in the hands of the Trustee consists of property and not of money. These are questions which the United States District

Court for the Southern District of New York has juris-
diction to hear and determine between these residents
and citizens of different States.

*Decrees reversed.*