HAROLD G. FERGUSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70463. Promulgated April 30, 1936.

*Robert M. L. Baker*, Esq., for the petitioner.
*Arthur L. Murray*, Esq., for the respondent.

## OPINION.

VAN FOSSAN: This proceeding involves deficiencies in income taxes of $16.40 for 1929 and $1,097.52 for 1930, plus a 25 percent penalty of $274.38 for delinquency of the taxpayer in filing his 1930 return. The petition sets forth five allegations of error, two of which respondent admits in his answer. By an amendment to his answer, respondent asks the Board to increase the amounts of the above deficiencies because of salaries, fees, commissions, and other compensation received by petitioner in 1929 and 1930, which had been considered community property in determining the deficiencies, but all of which was income of petitioner under a certain property settlement agreement entered into by petitioner and his wife on March 1, 1929.

The parties submitted the proceeding upon the pleadings, a stipulation of facts, and certain documentary evidence that was offered and received as a part of the stipulation. The stipulation relates only to the two issues remaining for determination, as all other issues have been expressly conceded. The controverted issues are:

(1) Whether petitioner realized taxable gain under section 44 (d) of the Revenue Act of 1928 upon the assignment by petitioner to Trust No. 5583 of his interest in and to 430 Units of Beneficial Interest in Trust No. 65, Pacific National Bank of Los Angeles, trustee, in accordance with the property settlement agreement between petitioner and his wife.

(2) Whether, under respondent's affirmative defense, the salaries, fees, commissions and other compensation for personal services received by petitioner after the property settlement agreement between petitioner and his wife are taxable in their entirety to petitioner.

The stipulated facts are substantially as follows.

On May 5, 1915, petitioner was intermarried with Dolores Anne Ferguson. On August 1, 1928, they separated. On March 4, 1929, an interlocutory decree of divorce was granted petitioner by the Superior Court of the State of California. Petitioner was granted a final decree of divorce on March 13, 1930.

Growing out of said divorce action which was then pending, petitioner and his wife, on March 1, 1929, entered into a property settlement agreement. This agreement stated that it was the desire of husband and wife to make an adjustment and agreement as to their property rights, and an agreement as to the obligation on the part of the husband to support his wife. A trust was created for the wife whereby certain property was transferred to the trustee by the husband, which transfer and declaration of trust the wife accepted in full satisfaction of any and all of her right, title, interest, and estate in the community property or the husband's separate property. The

wife accepted the trust provisions as full satisfaction of any obligation of maintenance and support by the husband and agreed to support, maintain, and educate their adopted daughter during her minority. It was agreed by both husband and wife that any and all property thereafter acquired by either would be his or her separate property, and each relinquished any and all rights to inherit or succeed as heir to any estate of the other.

Pursuant to a provision of said agreement and on April 24, 1929, petitioner assigned in writing to the Citizens National Trust & Savings Bank of Los Angeles, California, as trustee under a declaration of trust, No. 5583, all of his right, title, and interest in and to 430 units of beneficial interest in Trust No. 65, Pacific National Bank of Los Angeles, trustee. The duplicate of the assignment, together with the assignee's acceptance, was filed with the Pacific National Bank of Los Angeles, as trustee of Trust No. 65, and thereafter said assignee was recognized by Trust No. 65 as the owner of said 430 units of beneficial interest therein. Trust No. 5583 was revocable by petitioner only with the consent of Dolores Anne Ferguson, and the entire net income of said trust estate was payable to Dolores Anne Ferguson.

Trust No. 65, Pacific National Bank of Los Angeles, trustee, was created on April 10, 1928. The corpus of said Trust No. 65 was some 4,000 acres of land, together with improvements thereon, situate in Santa Barbara County, California, known as "Conception Ranch." On June 28, 1928, the ranch was sold by the Pacific National Bank of Los Angeles, as trustee of said Trust No. 65, at a gross profit of $199,869.89. The contract sales price was $386,666.66 of which the sum of $86,666.66 was paid to said trustee in cash and the balance of the contract price was payable in installments of $100,000 each, due respectively on November 1, 1929, November 1, 1930, and November 1, 1931, deferred payments bearing interest at the rate of 7 percent per annum. The trustee, in filing its fiduciary returns for the years 1928, 1929, and 1930, reported the profit on said sale on the installment plan basis. The percentage of profit returnable upon the collection of the balance of the contract price was 51.6904 percent.

The trustor of said Trust No. 65 issued a total of 1,495 units of beneficial interest in said trust. The units of beneficial interest were transferable and it was petitioner's interest in 430 units of beneficial interest in said trust which was assigned to Trust No. 5583 in accordance with the property settlement agreement between petitioner and his wife. The said 430 units were purchased by petitioner during the year 1928 at a cost of $43,000, or at the rate of $100 per unit. The respondent has determined that said assignment by petitioner falls within the scope of section 44 (d) of the Revenue Act of 1928, and has accordingly included as taxable income of petitioner for the year 1929 the sum of $35,973.74 computed under that section.

The petitioner received as salaries, fees, commissions, and other compensation for personal services during the year 1929 the sum of $28,200, or $2,350 a month, and during the year 1930 the sum of $23,600, or $1,966.66 a month.

Separate income tax returns were filed by the petitioner and his said wife, Dolores Anne Ferguson, for the year 1929.

For the calendar year 1930, on March 14, 1931, petitioner filed a "Tentative Return" and requested an extension of time to June 15, 1931, for filing a "Completed Return." One-fourth of the estimated tax liability, to wit, $150, was paid by petitioner at the time of filing said tentative return. An extension of time for filing said completed return was granted petitioner as requested. The completed return was not filed by the petitioner on or before the due date as extended, and in accordance with section 3176 of the Revised Statutes a deputy collector on October 18, 1932, filed a completed 1930 return for petitioner.

The first issue arises as a result of petitioner's transfer of 430 units of beneficial interest in Trust No. 65. Petitioner acquired the units in 1928 at a cost of $43,000, transferring the units in 1929 in compliance with the terms of a property settlement with his wife. Respondent has applied section 44 (d) of the Revenue Act of 1928 to this transfer and computed a gain of $35,973.74. The pleadings and the stipulation limit the issue to whether petitioner realized any taxable gain under section 44 (d)[1] by his transfer.

In applying section 44 (d) the legislative intent and purpose must be borne in mind. Prior to its enactment holders of installment obligations had been able to escape tax on income by disposing of the installment obligations in a nontaxable transaction, *Wallace Huntington*, 15 B. T. A. 851; *M. A. Milan*, 16 B. T. A. 1112; *Charles F. Meagher*, 20 B. T. A. 68. Section 44 (d) was designed to stop this loophole by determining gain or loss upon disposition of installment obligations. The constitutionality of the section and its application have been upheld in numerous decisions of the courts and this Board, *Nuckolls* v. *United States*, 76 Fed. (2d) 357; *Provident Trust Co. of Philadelphia* v. *Commissioner*, 76 Fed. (2d) 810, affirming 29 B. T. A. 374; *Lawler* v. *Commissioner*, 78 Fed. (2d) 567, affirming 29 B. T. A. 227.

---

[1] SEC. 44. INSTALLMENT BASIS.

\* \* \* \* \* \*

(d) *Gain or loss upon disposition of installment obligations.*—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

The petitioner contends that section 44 (d) is inapplicable because the "installment obligations" dealt with in this section refer to the evidence of indebtedness acquired by the vendor from the vendee, whereas the petitioner transferred units of beneficial interest which represented his investment in Trust No. 65. Petitioner contends that Trust No. 65 is the vendor of the property and holds the installment obligations in its own right. We do not understand that respondent disagrees with petitioner on the position that Trust No. 65 occupies in this transaction.

Respondent's contention is that petitioner, as a *cestui que trust*, assigned his right, title, and interest in the corpus of Trust No. 65; that this corpus consisted solely of installment obligations; that petitioner, by his assignment, disposed of installment obligations within the meaning of the statute, because petitioner's units of beneficial interest were evidence of and represented his direct ownership in the installment obligations held by Trust No. 65, under the doctrine of *Brown* v. *Fletcher*, 235 U. S. 589.

We are of the opinion that it can not be said that the disposition of these 430 units of beneficial interest was the equivalent of the transfer of 430/1495 of the installment obligations held by the trustee. It is important to observe that what petitioner assigned was participating certificates. A very different situation would obtain were the trustee of Trust No. 65 the assignor of the installment obligations received by it. In no real sense was there in this case a satisfaction of installment obligations at other than their face value, or a distribution, transmission, sale, or other disposition of installment obligations as a result of petitioner's action. The trustee of Trust No. 65 and the corpus thereof, held for collection, were not affected by the assignment, but only the beneficiaries of the trust. Whereas, petitioner had been entitled to the net proceeds and was the owner of the units before the assignment, thereafter the Citizens National Trust & Savings Bank of Los Angeles, petitioner's assignee, was entitled to the proceeds, and was the recognized owner of the 430 units. By accepting the assignment, the Citizens National Trust & Savings Bank subjected itself to the terms and conditions contained in the trust indenture creating Trust No. 65, but this change in the ownership of the units did not disturb the trust corpus of Trust No. 65 or the installment obligations due to it. It merely substituted one beneficiary for another. The Pacific National Bank, as trustee of Trust No. 65, was bound by the trust indenture to perform its duties thereunder, and where, as here, beneficial interests could be bought and sold on much the same basis as shares of stock in a corporation, the shifting of beneficial interest from one party to another was of no concern to the trustee, so long as the conditions under which transfers were permitted had been complied with by the parties.

Here the conditions were complied with, the transfer was recognized, and the Pacific National Bank, as trustee, was obligated to pay the net proceeds of each installment payment over to Citizens National Trust & Savings Bank instead of to petitioner. It might be interesting to inquire what position respondent would take in the event the Citizens National Trust & Savings Bank should transfer these units. If such a transfer were made, would respondent again apply section 44 (d)? If his theory is sound, respondent could say that each successive transfer was a disposition of installment obligations. There appears to be no reason why his theory should not be as applicable to successive transfers of the certificates of participation as it is to the first transfer. This latter situation reveals the weakness of the theory and points to the fact that the installment obligations themselves, and not some undivided interest in the net proceeds thereof, are what Congress had in mind in enacting section 44 (d). Furthermore, it appears that our holding herein is in accord with respondent's own ruling appearing in I. T. 2547, C. B. IX-2, p. 121.

The decision upon which respondent relies to support his contention, *Brown* v. *Fletcher*, *supra*, is not in point. That case involved a question of the jurisdiction of a Federal District Court. The Supreme Court held that in an action to recover property, or an interest in property, by the assignee of a beneficiary under a testamentary trust, the Federal District Court had jurisdiction, where the requisite value and diversity of citizenship existed. In its opinion the Court stated that the instrument used to evidence the beneficiary's alienation was not a chose in action payable to the assignee, but an evidence of the assignee's right, title, and estate in and to the property. Respondent has seized upon this language to justify his contention and has ignored the language in the opinion preceding the above statement that the rights of the beneficiary depended upon the terms of the will creating the trust and the duty which the law imposed upon the trustee because of his fiduciary capacity. The rights of the beneficiaries in this proceeding likewise depend upon the trust indenture and the duty imposed by law upon the trustee. Petitioner acted fully within his rights in making the assignment and the trustee was bound by the terms of the trust indenture to recognize the transfer when it complied with the conditions imposed. No question is raised as to petitioner's compliance, nor could one be in view of the record.

We do not pass upon the question of whether petitioner realized a gain upon the disposition of his $43,000 investment in satisfaction of the obligation to support his wife and adopted minor daughter, since the issue has been expressly limited by the pleadings and stipulation to whether gain was realized under section 44 (d), *supra*.

The second issue is whether salaries, fees, commissions, and other compensation received by petitioner in 1929 and 1930, the amounts of which were stipulated, were separate income to petitioner or community income, in view of the property settlement of March 1, 1929. This issue is controlled by our decision in *Muriel Oakes Ames*, 30 B. T. A. 516, where we held the separation agreement operative. Since the parties here have stipulated petitioner's monthly income for 1929 and 1930, there is no failure of proof with respect to the earnings that are separate and the earnings that are community income. See also *Chester Addison Jones*, 31 B. T. A. 55, petition for review denied, *Commissioner* v. *Jones*, 82 Fed. (2d) 329.

The deficiency notice asserts a negligence penalty for 1930 in the amount of $274.38. No issue was raised by the pleadings with respect thereto, but were the issue presented the stipulated facts would justify respondent's imposition of the penalty. The penalty will be added to the deficiency recomputed under Rule 50.

*Decision will be entered under Rule 50.*