### FERROCARRILES DEL ESTE v. BOWIE et al.

### No. 3831.

Circuit Court of Appeals, First Circuit.

July 2, 1943.

Henri Brown, of San Juan, Puerto Rico, for appellant.

E. T. Fiddler, H. S. McConnell and J. G. Gonzalez, all of San Juan, Puerto Rico, for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Since we have come to the conclusion that the court below did not have jurisdiction to entertain the complaint herein, it becomes unnecessary to recite the facts in much detail.

The complaint sought specific performance of a certain agreement by Ferrocarriles del Este, a Puerto Rican corporation; and also damages for non-performance of the same, as follows:

"Ferrocarriles hereby undertakes to permit United to use that part of its railroad lying in or upon the rights of way crossing the properties Mulas and Bajandas in the ward of Rio Abajo of Humacao, which rights of way were acquired respectively from Maria Rios and Fajardo Sugar Growers Association, United paying for such use a compensation of three and a half cents for every ton of freight transported over said rights of way, and if the Public Service Commission or any other governmental authority fixes a greater rate for the said use of the rights of way, then Mister Roig and Ejemplo for themselves and for their successors, undertake jointly and severally to pay to Ferrocarriles the

difference or excess between the agreed rate of three and one-half cents per ton and the rate which may be fixed by the Public Service Commission or other governmental authority, or to return such difference to the United or its successor."

"United" refers to another Puerto Rican corporation, United Porto Rican Sugar Company. The contract right which this agreement purports to give United was in connection with United's operation of two sugar mills owned by it, Central Pasto Viejo and Central Juncos. Subsequently, United was reorganized in receivership. Substantially all of its properties, including the two Centrals mentioned, were transferred to the plaintiffs, who became assignees also of United's rights under the said contract.

Plaintiffs are seven individuals described as trustees of a trust known collectively as Eastern Sugar Associates. Four of them are resident and domiciled in Maryland, the remaining three in New York.

Admittedly United could not have maintained this suit in the District Court of the United States for Puerto Rico. But it is claimed that United's assignees, the plaintiffs, are in a different case, and that as to them the requisite diversity of citizenship exists within the meaning of § 41 of the Organic Act, 39 Stat. 965, 48 U.S.C.A. § 863—which we shall quote later on—conferring jurisdiction upon the district court.

Superficially, this claim receives support in a literal reading of § 41, but the true Congressional purpose, contrary to plaintiffs' claim, is disclosed by examination of the long legislative history relating to the jurisdiction of the district court.

The judicial system of Puerto Rico prior to annexation by the United States comprised a Supreme Court, district trial courts of general jurisdiction and municipal courts, with proceedings conducted in the Spanish language and according to the forms of civil law. By § 33 of the Foraker Act, 31 Stat. 84, 48 U.S.C.A. § 861 note, these insular courts were continued, with provision for the appointment of the judges of the Supreme Court by the President and of the judges of the inferior courts by the Governor. Section 34 of the Foraker Act, 48 U.S.C.A. § 863 note, created the District Court of the United States for Puerto Rico, and provided that this court "shall have, in addition to the ordinary jurisdiction of district courts of the United States, jurisdiction of all cases cognizant in the circuit courts of the United States, and shall proceed therein in the same manner as a circuit court."

At that time, jurisdiction of the circuit courts of the United States, based on citizenship of the parties, was defined in Act Aug. 13, 1888, 25 Stat. 434, 28 U.S.C.A. § 71 note, as follows:

"That the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars * *. * in which there shall be a controversy between citizens of different States * * * or a controversy between citizens of a State and foreign states, citizens, or subjects * * * nor shall any circuit or district court have cognizance of any suit except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made * * *."

The limitation on diversity jurisdiction, in case of assignments, has a long history, going back to the Judiciary Act of September 24, 1789, 1 Stat. 79, 28 U.S.C.A. § 71 note. See Brown v. Fletcher, 1915, 235 U.S. 589, 595, 35 S.Ct. 154, 59 L.Ed. 374.

The policy which dictated this limitation on diversity jurisdiction is, so far as we can see, equally applicable to the federal district court in Puerto Rico. That must have been the view of Congress in 1900, for such diversity jurisdiction as it originally conferred upon the newly created district court in Puerto Rico by § 34 of the Foraker Act was subject to the same limitation, in the case of assignments, as was then applicable to the jurisdiction of the circuit courts.

Section 3 of the Act of March 2, 1901, 31 Stat. 953, amended the Foraker Act so as to enlarge the class of diversity cases maintainable in the district court. It was there provided:

"That the jurisdiction of the district court of the United States for Porto Rico in civil cases shall, in addition to that conferred by the Act of April twelfth, nineteen hundred, extend to and embrace controversies where the parties, or either

of them, are citizens of the United States, or citizens or subjects of a foreign State or States, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars."

The legislative history of this change discloses no purpose by Congress to cast off the limitation on diversity jurisdiction in the case of assignments, a limitation which, as we have seen, had been adopted by reference in § 34 of the Foraker Act. See Sen.Rep. No. 2296, 56th Cong., 2d Sess. (1901) pp. 10-12. The committee report states that the amendment enlarging the class of diversity cases had been recommended by members of the bar in Puerto Rico. It quoted a letter from Mr. F. H. Dexter, pointing out that the district court had had very little diversity business because "As between citizens of different States, there are so few citizens of different States, within the meaning of that term, in Porto Rico, that rarely a controversy arises under this clause." And "The same is true of controversies between a citizen of a state and foreign states, citizens, or subjects thereof." The letter further stated that though the island contained a great many wealthy Spaniards, "under the present jurisdiction of the court they could not invoke its jurisdiction unless they were in controversy with another foreigner or with a citizen of one of the States". It was recommended that the act be amended "so that any American, or any foreigner, alone, might invoke the jurisdiction" of the district court in civil cases over a prescribed amount. This recommendation prevailed in Congress; but it is to be noted that it had to do with enlarging the classes of citizenship to which diversity jurisdiction applied, not with removing the restriction denying jurisdiction in cases of assignments, where the assignor could not have sued in the district court.

Thus the jurisdiction of the District Court for Puerto Rico remained in this class of cases, until the passage of the Jones Act, the new Organic Act of March 2, 1917, 39 Stat. 951, 48 U.S.C.A. § 731 et seq.

Meanwhile, in 1911, the circuit courts of the United States were abolished by § 289 of the Judicial Code, 36 Stat. 1167, 28 U.S.C.A. § 431 note. Section 24 of the Judicial Code gave the district courts original jurisdiction as follows (36 Stat. 1091, 28 U.S.C.A. § 41(1):

"Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue, or between citizens of the same State claiming lands under grants from different States; or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens, or subjects. No district court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made. * * *"

Section 41 of the Organic Act of 1917, 39 Stat. 965 conferred jurisdiction upon the District Court of the United States for Puerto Rico in the following terms:

"Such district court shall have jurisdiction of all cases cognizable in the district courts of the United States, and shall proceed in the same manner. * * * Said district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States not domiciled in Porto Rico, wherein the matter in dispute exceeds, exclusive of interest or cost, the sum or value of $3,000, and of all controversies in which there is a separable controversy involving such jurisdictional amount and in which all of the parties on either side of such separable controversy are citizens or subjects of the character aforesaid."

We think the effect of this section in the present Organic Act is the same as that of the amendatory act of March 2, 1901, supra; that is, it enlarges the classes of citizenship upon which the diversity jurisdiction of the District Court for Puerto Rico is based, over and above the diversity jurisdiction conferred generally upon district courts of the United States by § 24 of the Judicial Code, but by implication it leaves in effect the limitation upon di-

versity, jurisdiction in case of assignments, where the assignor could not have prosecuted the suit in the federal court. It was so held by the District Court for Puerto Rico in a case which came up shortly after the passage of the Jones Act, Porto Rico Fruit Union v. New York & Porto Rico Steamship Co., 1922, 12 P.R.Fed.Rep. 448. So far as we can find, this is the only case in which the point has been raised; and apparently the decision has been acquiesced in until the present case came along.

Appellees profess to find significance in the fact that whereas the amendatory act of March 2, 1901, gave jurisdiction to the district court in "controversies" in the enlarged categories, § 41 of the Jones Act says that the district court shall have jurisdiction "of all controversies" in the enlarged categories. We find nothing in the legislative history of the Jones Act to indicate that Congress had in mind, by this slight change of phraseology, to eliminate the assignee clause of § 24 of the Judicial Code as applied to suits in the District Court of the United States for Puerto Rico. In Porto Rico Railway, Light & Power Co. v. Mor, 1920, 253 U.S. 345, 347, 40 S.Ct. 516, 64 L.Ed. 944, the court pointed out that the Jones Act curtailed the jurisdiction of the district court in two respects, (1) the jurisdictional amount, which by the amendatory act of March 2, 1901, had been lowered to $1,000, was raised to $3,000, and (2) whereas by the amendment of 1901 the district court had been given jurisdiction in case either party was a citizen of the United States, even if he was domiciled in Puerto Rico, the Jones Act limited the jurisdiction dependent upon American citizenship to cases where the Americans were not domiciled in Puerto Rico. The court there held that the clause "not domiciled in Porto Rico" in § 41 of the Jones Act applied to both the preceding clauses, so that jurisdiction was not conferred over an action by an alien domiciled in Puerto Rico against a local corporation. The court said (page 348 of 253 U.S., page 518 of 40 S.Ct. 64 L.Ed. 944), "The act manifests a general purpose to greatly curtail the jurisdiction of the District Court. If the application of the clause were doubtful, we should so construe the provision as to effectuate the general purpose of Congress." We think the same narrow rule of interpretation should be applied in the case at bar with reference to the · language of § 41 now in question. This is especially so in view of the fact that Con-

gress at the outset, in § 34 of the Foraker Act, made the old assignee clause applicable as limiting the diversity jurisdiction of the District Court for Puerto Rico, and never since that time has Congress indicated any awareness that it was departing from that fundamental policy.

We have no doubt that the present is a suit to recover upon a chose in action in favor of an assignee within the meaning of the assignee clause of § 24 of the Judicial Code. Corbin v. County of Black Hawk, 1881, 105 U.S. 659, 26 L.Ed. 1136; Shoecraft v. Bloxham, 1888, 124 U.S. 730, 8 S.Ct. 686, 31 L.Ed. 574; Plant Investment Co. v. Jacksonville, Tampa & Key West Ry. Co., 1894, 152 U.S. 71, 14 S.Ct. 483, 38 L.Ed. 358; Brown v. Fletcher, 1915, 235 U.S. 589, 35 S.Ct. 154, 59 L.Ed. 374.

The judgment of the district court is vacated, and the case is remanded to that court with directions to dismiss the complaint, without prejudice, for lack of jurisdiction; appellant recovers costs of appeal.