594

CLARENCE P. BYRNES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87919.   Promulgated March 14, 1939.

*Thomas Watson, Esq.,* for the petitioner.
*Arthur Carnduff, Esq.,* for the respondent.

596

HILL: The first question for decision in this case is whether or not respondent erred in including in petitioner's gross income the amount of the net income derived by a certain trust during each of the taxable years. On January 21, 1929, petitioner created a trust, the net income of which was payable to him during his lifetime and thereafter to others. On July 8, 1932, petitioner created a trust for the benefit of his daughter and her children, and on the same date executed a purported assignment to the latter trust of all the income which he would thereafter be entitled to receive from the former trust until January 1, 1937. The net income earned by the first trust in each of the taxable years was paid over to the trustee of the second trust in accordance with such assignment, and these amounts respondent has taxed to petitioner. Under the facts disclosed by the record before us, respondent's action, we think, must be sustained.

*Lucas* v. *Earl*, 281 U. S. 111, and *Burnet* v. *Leininger*, 285 U. S. 136, established the doctrine that future income representing compensation for personal services, such as salary and attorney's fees, or a distributive share of future partnership income, can not be assigned so as to render it nontaxable to the assignor. But petitioner points out that the assignments in those cases passed no interest in property which produced the income attempted to be assigned, and argues that in the present proceeding a different rule

should be applied, citing, among others, *Irwin* v. *Gavit*, 268 U. S. 161; *Blair* v. *Commissioner*, 300 U. S. 5; and *Ellen S. Booth*, 36 B. T. A. 141.

In each of the last two cited cases it was held that the trust income paid directly to the beneficiaries' assignees, under the facts and circumstances disclosed, was taxable to the assignees and not to the original beneficiaries or assignors. *Irwin* v. *Gavit*, decided that trust income constitutes taxable income and not property acquired by bequest, while all three decisions hold that a gift of income by *valid* assignment transfers an equitable interest in the corpus of the trust property. The instant case is distinguishable on the facts from those cited and relied on by petitioner, in at least one important and controlling particular, namely, that in each there was no restraint upon alienation, and hence the assignment was valid.

In *Blair* v. *Commissioner*, *supra*, the tax was not upon earnings which were taxable to those who earned them, as in the *Earl* and *Leininger* cases, but involved a tax which, as in the present case, resulted from ownership of the income-producing property, and the assignment of such property rights was valid. In its opinion the Court said:

The will creating the trust entitled the petitioner during his life to the net income of the property held in trust. He thus became the owner of an equitable interest in the corpus of the property. *Brown* v. *Fletcher*, 235 U. S. 589, 598, 599 * * * *Irwin* v. *Gavit*, 268 U. S. 161, 167, 168 * * * *Senior* v. *Braden*, 295 U. S. 422, 432, 433 * * *. The interest was present property, alienable like any other, *in the absence of a valid restraint upon alienation.* * * *

*We conclude that the assignments were valid*, that the assignees thereby became the owners of the specified beneficial interests in the income, and that as to these interests they and not the petitioner were taxable for the tax years in question. [Italics supplied.]

Likewise, in *Ellen S. Booth*, *supra*, we pointed out in our opinion that, "The trust agreement contained no restriction upon alienation, and the income of the trust is payable to the beneficiaries, 'their heirs and assigns.'"

In the present case the trust agreement was by its terms irrevocable and contained a most carefully drawn and broadly stated spendthrift clause; indeed, it would be difficult to use plainer or more unambiguous language designed to prevent assignment of the income by any beneficiary prior to its actual receipt. The provisions are set out in *haec verba* in our findings of fact above. It was specifically stated that neither the trust estate nor any income therefrom should be subject in any manner to the control of the *cestuis que trustent*, or either of them, and that none of the *cestuis que trustent* should have any right or title in the trust income, or power of alienation, until actually paid over in accordance with the terms of the trust instrument. There is no suggestion by either party hereto that such

restraint upon alienation was invalid, and we know of no reason to question its validity.

Petitioner, as donor of the trust, undoubtedly had the legal right to limit his gift to the beneficiaries as provided in the trust instrument, and he made no exception in the application of such provisions to himself as one of the *cestuis que trustent*. It would follow, under the doctrine of *Blair* v. *Commissioner, supra*, and the authorities cited therein, that petitioner reserved to himself an equitable interest in the corpus of the trust property to the extent of a life interest in the income, but such interest did not attach until the income was actually paid over to him, and he, as well as succeeding beneficiaries, was prohibited from assigning the income or otherwise disposing of it prior to its actual receipt. Prior to actual receipt, petitioner had no right or title to the income and no power to assign it. The purported assignment was, therefore, void.

Prior to the attempted assignment, there can be no doubt that the income, when and as paid over to petitioner, constituted income taxable to him. *Michael Fay et al., Executors*, 34 B. T. A. 662. Cf. *Irwin* v. *Gavit, supra*. Therefore, since the attempted assignment was without legal effect, and the trust income in controversy had to become petitioner's income before he could dispose of it, it was taxable to him in the same manner and to the same extent as if such assignment had never been executed. Respondent's action on the first issue is approved.

The second question is whether or not respondent correctly included in petitioner's taxable income for 1933 the amount of $10,000 paid on July 1, 1933, for patent No. 1,815,547 which petitioner, on May 26, 1933, had assigned to a trust created by his wife for her own benefit on January 11, 1929. This issue is solely one of fact.

On May 26, 1933, the same date on which he assigned the patent to his wife's trust, petitioner executed a nonexclusive license relative to patent No. 1,815,547 in favor of the Libbey-Owens-Ford Glass Co., which subsequently purchased the patent. This license was delivered on June 15, 1933, after the assignment of the patent to the trustee had been recorded in the United States Patent Office on May 29, 1933. The assigned patent related to the manufacture of laminated glass, and the license executed by petitioner contained a paragraph releasing the glass company from any claim by him for damages or profits resulting from the use of any inventions coming within the scope of any patents then owned by petitioner relating to sheet, flat, or laminated glass.

Respondent contends that the $10,000 paid by the glass company represented not only consideration for assignment of the patent, but also for petitioner's release in respect of any other patents owned by him relating to the manufacture of laminated glass, and, since peti-

tioner did not adduce evidence to establish any basis for allocation of the $10,000 between the patent and the release, the entire amount is taxable to petitioner as the proceeds of sale of an asset having no cost basis. Respondent's contention, we think, can not be sustained.

Petitioner testified that the glass company desired a general release from him in connection with the assignment of the patent from the trustee. Aside from the release, there is nothing in the record to indicate that petitioner owned any such other patents, and it appears that the release was in fact merely in the nature of a quit claim which petitioner was willing to execute without a monetary consideration. In any event, petitioner testified—and there was nothing to contradict his testimony—that the $10,000 was paid by the glass company as consideration for the assignment of the patent then owned by his wife's trust.

Respondent's action on the second issue is reversed.

*Decision will be entered under Rule 50.*