## HUBER v. HELVERING, Com'r of Internal Revenue.

No. 7548.

United States Court of Appeals for the District of Columbia.

Decided Jan. 27, 1941.

David H. Blair, J. G. Körner, Jr., and Geo. D. Brabson, all of Washington, D. C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Newton K. Fox, Sp. Assts. to Atty. Gen., Department of Justice, and J. P. Wenchel, Chief Counsel, and Robt. L. Williams, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

VINSON, Associate Justice.

The Board of Tax Appeals agreed with the Commissioner's determination that the petitioner has income tax deficiencies of $1,105 and $1,084.11 for the years 1933 and 1934, respectively. The Board found the facts as stipulated by the parties. Our statement of the case is an abridgement of the stipulation.

The petitioner, a resident of Connecticut, created a trust there. He has a life interest in all of the income, payable in quarterly instalments. Whenever the income is below $10,000 for any year, the difference must be paid from the principal, if the petitioner so requests. The deductions from principal are to be made up whenever the income is more than $10,000. At his death the corpus is to be administered under four trusts for the benefit of his widow and children. The trust instrument states that the petitioner has surrendered his power to amend, modify, or revoke, but he can appoint new beneficiaries, other than himself, if all those presently named predecease him. There is a "spendthrift" provision preventing the creditors of any beneficiary from reaching the corpus or income and the beneficiaries from anticipating or assigning their interests in the trust funds or income.

On March 18, 1933, the petitioner wrote the trustee instructing him to transfer quarterly, during the year ending March 4, 1934, the income to principal. On March 3, 1934, petitioner wrote a similar letter in respect to the year ending March 4, 1935.[1]

The issue in the case is whether the amounts so transferred should be included in petitioner's gross income. The Commissioner and the Board have determined that they should. We agree with that result.

The Board believed that the letters were directions to transfer rather than irrevocable assignments, but went on to pitch its holding upon the proposition that the spendthrift clause was applicable to the donor as well as to the other beneficiaries and therefore the attempted assignments had no legal effect.[2]

Instead of determining whether the letters were instructions or assignments, or whether the assignments could have legal effect under the Connecticut spendthrift trust law, we prefer to answer the one basic question: were the amounts involved

---

[1] In 1932 the petitioner made the assignment on December 31st. There is no dispute over this assignment. In 1933 the assignment was made on March 18th, in 1934 on March 3d. The trust was established on March 4, 1931. The petitioner makes his return on a calendar year basis. For the purposes of this case we are attaching no legal significance to the precise time of the assignments.

[2] The Board said that the case was ruled by Byrnes v. Com'r of Internal Revenue, 39 B.T.A. 594. This decision was reversed by the Third Circuit Court of Appeals, 110 F.2d 294. The Court reasoned that since a settlor cannot create a spendthrift trust for his own benefit, that is, a creditor can claim the settlor's income, therefore, the settlor can assign his income. The Court believed that this was the trust law of Pennsylvania.

includable as gross income under Section 22 (a) of the applicable Revenue Acts.[3]

In holding that the income of the trust for the years 1933 and 1934, even though validly assigned, is taxable to the petitioner, we are employing the reasoning of the Blair,[4] Horst,[5] and Eubank[6] cases. In the Blair case, the petitioner had become entitled under a testamentary trust to its whole income during his life. He assigned his entire future interest in specified amounts (measured by dollars per year) of the net income. It was held that the assignor should not be taxed upon the income. In the present case, we have a donor-beneficiary who twice made yearly assignments of income.

The Blair case is heavily relied upon by the petitioner, but we believe that the rationale of that case demands that he should bear the tax in the instant case. " * * * *the conveyancer was not seeking to limit the assignment* so as to make it anything less than *a complete transfer of the specified interest* of the petitioner *as the life beneficiary of the trust,* * * *. The will creating the trust entitled the petitioner *during his life to the net income* of the property held in trust. *He thus became the owner of an equitable interest in the corpus of the property.* * * * The interest was present property alienable like any other, in the absence of a valid restraint upon alienation. * * * The beneficiary may thus transfer a part of his interest as well as the whole. * * * The assignment of the beneficial interest is not the assignment of a chose in action but of the 'right, title, and estate in and to property.'" [7] (Italics supplied.)

A beneficiary having a right to the net income from a trust for his life is said to have an equitable interest in the corpus of the trust, an interest in the estate. If he completely assigns that right to another, the assignee has the same equitable interest in the property or estate. If, as in the Blair case, he assigns a specified amount of income for the rest of his life, the assignee may well have a proportionate interest in the corpus, that part of the corpus which has the income producing capacity of the specified amount assigned. It is believed that is what the statement, "The beneficiary may thus transfer a part of his interest * * *", means. The references in the Blair case present no instance where a person has transferred less than *all of his future interest* in all or part of the income. When one assigns all of his future interest in the whole income to a third party he no longer has any personal economic concern in the income producing capacity of the corpus. When one assigns all of his future interest in a specifically designated amount of the income, his concern in the corpus comes only from the undivided estate that is still his.

In the present case, the petitioner had a life interest in all of the income. That gave him an equitable estate under the Blair case. He assigned only one year's income. What part of his estate did he assign? We believe that it should be said that he merely divested himself of one year's income and that he has not given up any of the property or estate that earns for him.[8] After the year is over the income will again flow to him. He will want 100%, not 90% nor 95% of the potential earning power of the principal when the year is ended. He certainly did not divest himself of his interest in the entire corpus, nor is it reasonable to say that he transferred a part of it because during the year the assignee is to receive all of the income —no segment of the corpus represents that. For the one year the assignee is interested in what the corpus does for him. Meanwhile the assignor is interested in the corpus for all the years that he may yet live.

In trust and corporate structures it is not always easy to say what property is whose. An estate in the corpus, the language of the Blair case, is one vehicle, but it is a nebulous concept at the outset.

---

[3] The Revenue Acts of 1932 and 1934 are involved. Section 22 (a) is the same under both Acts, 26 U.S.C.A.Int.Rev. Acts, pages 487, 669. "The question remains whether, treating the assignments as valid, the assignor was still taxable upon the income under the federal income tax act. That is a federal question." Blair v. Com'r of Internal Revenue, 300 U.S. 5, 11, 57 S.Ct. 330, 332, 81 L.Ed. 465.

[4] Blair v. Com'r of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

[5] Helvering v. Horst, 61 S.Ct. 144, 85 L.Ed. —, Nov. 25, 1940.

[6] Helvering v. Eubank, 61 S.Ct. 149, 85 L.Ed. —, Nov. 25, 1940.

[7] Blair v. Com'r of Internal Revenue, 300 U.S. 5, 13, 14, 57 S.Ct. 330, 333, 81 L.Ed. 465.

[8] Compare Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

Many little estates could be visualized. Nonetheless, the law isn't for intellectual exercise alone; it must be administered. Somewhere between the facts of the Blair case and the facts here is the line of demarcation; we are not called upon to draw that line, a line demanded, we believe, by the reasoning of the Blair case. In the Blair case the assignor had a right to all the income for life. He assigned a definite part of that life income. The assignee got all the assignor had in that part of the estate. Here the assignor has a right to all the income for life. He assigned a year's income. The assignee received one year's income. The assignor retained all other years'; his reversionary interest is much greater than the interest the assignee received. Thus we say the assignor keeps his estate. It being his estate, the earnings every year are his income. We determine, therefore, that this case is within the underlying principle but not within the rule of the Blair case.

That a person should be taxed upon the income which he assigns when he retains the corpus is indisputably shown by the case of Helvering v. Horst. True, in the instant case, the petitioner does not have the assurance that he will be able to liquidate the corpus for his own personal benefit as in the Horst case, but he has a right to all of the income from the corpus for his life. That right has been said to give him an equitable interest in the corpus, and that interest he has not lessened.

Moreover, what happened to the monies assigned? They increased the corpus, and the corpus earns for the petitioner. He can now look forward to more income each year. In the Blair case the assignor lost the estate which the assignee acquired. In this case the assignor not only kept his estate but also enlarged it by the assignment itself. And when the emphasis is placed upon the assignment of income rather than upon the interest in corpus the Eubank case is even more persuasive that the petitioner should bear the tax.

Then after the petitioner has enjoyed for life the income producing capacity of the money assigned that money will earn for his wife and will benefit his children both by the income it produces and later by the division of the principal itself. He has made use of his power of disposition to procure a satisfaction "which he would otherwise procure only by the use of the money when received." [9]

Other facts of the case argue in favor of the petitioner bearing the tax. He is the creator, user, and beneficiary of the trust device. If he were not taxable on the assigned income he could choose to assign or not to assign each year with attention directed to his other income and to the surtax brackets. There is also the provision which allows him to draw upon the corpus when the income is less than $10,000, but we do not pass upon what significance, if any, this fact has under either Section 22(a) or Section 166, 26 U.S.C.A. Int.Rev.Code § 166. In basing our result upon the meaning of income under Section 22(a) we employ only the facts that the petitioner had a life interest in the income of the trust, that he assigned one year's income, and that the assignment was to the trust principal which earns for him and which will ultimately benefit his wife and children.

Affirmed.

GRONER, C. J. (concurring).

In my opinion, the facts of this case bring it within the rule of Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L. Ed. 465. But since, as I think, Helvering v. Horst, 61 S.Ct. 144, 85 L.Ed. ——, and Helvering v. Eubank, 61 S.Ct. 149, 85 L. Ed. ——, decided November 25, 1940, have made the rule in the Blair case no longer controlling, I concur on the authority of the Horst and Eubank cases.

---

[9] Helvering v. Horst, 61 S.Ct. 144, 148, 85 L.Ed. ——, Nov. 25, 1940.